**In re Linda Ballard DeVORE, Debtor.**

**Linda Ballard DeVORE, Appellant,**

**v.**

**Richard MARSHACK, Trustee; Jeffrey W. Virden, Esquire, Appellees.**

**BAP Nos. CC–97–1836–BOvH, CC–97–1837–BOvH.**
**Bankruptcy No. SA 93–21869–LR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 20, 1998.

Decided July 31, 1998.

Linda Ballard DeVore, Tacoma, WA, Pro se.

Jon K. Alban, Santa Ana, CA, for Richard Marshack.

Before BRANDT, HAGAN, and OVERSTREET [1], Bankruptcy Judges.

1. Hon. Karen A. Overstreet, Bankruptcy Judge for the Western District of Washington. sitting by designation.

## OPINION

BRANDT, Bankruptcy Judge.

Debtor appeals two related bankruptcy court orders, the first denying her motion for an order directing the Chapter 7 trustee to release state court litigation proceeds, and the second approving fees for special counsel's services in the state court litigation. We REVERSE both orders and REMAND the former for further proceedings in accordance with this disposition.

### FACTUAL BACKGROUND

Appellant–Debtor Linda Ballard DeVore ("DeVore" or "Debtor") filed a petition for relief under Chapter 7 [2] on 1 November 1993. Richard Marshack ("Marshack" or "trustee") was appointed Chapter 7 trustee. Among the assets listed in DeVore's Schedule B was a cause of action filed in Los Angeles County Superior Court, *Linda Ballard DeVore v. Trans Union Corporation, et al.*, Case No. BC077839 ("state court litigation").

By order dated 16 September 1994, the trustee was authorized to employ Jeffrey Virden ("Virden") as special counsel to the trustee to represent the estate in the state court litigation. The order provides that Virden is to "receive 33⅓% of any amounts (including principal, interest, costs or attorneys' fees) from settlement, award, judgment or other recovery from the State Court Action."

DeVore moved from her Orange County, California residence in October of 1994 and currently resides in Tacoma, Washington. She filed a change of address with the bankruptcy court on 22 September 1997.

On 12 July 1996, after jury trial in the state court litigation, a judgment of $15,000 plus costs was entered in favor of the plaintiff-debtor against defendant Bank of America. On 31 October 1996, Marshack filed a Trustee's Report of No Assets, and an order closing the case was entered the following day.

DeVore contacted the trustee's office in January of 1997 to inquire as to why the case had been closed. The individual who answered her call told her the trustee had closed the case because he did not believe it was economical to administer the judgment against the Bank of America. DeVore also contacted Virden, who told her the trustee had abandoned the judgment. Subsequently, believing that she would be the recipient of the litigation proceeds, DeVore promised payment to Schick Moving and Storage Company for storage of items for which $11,031.77 was past due. Schick agreed to forego its right to foreclose based on DeVore's promise of payment.

As a result of Virden's collection efforts, Bank of America issued a check on 23 June 1997 for $18,652.00, made payable to Jeffrey W. Virden, Esq., Linda Ballard DeVore, and Richard A. Marshack, Trustee. Virden forwarded the check to DeVore, who signed and returned it to Virden. Virden then signed the check and forwarded it to Marshack on 18 July 1997.

By letter to the court dated 4 August 1997, DeVore indicated her new counsel to be Robert J. Anderson ("Anderson") and provided his address. In the letter, DeVore stated, "[i]f there are any motions to reopen the case or for other relief, we wish the opportunity to oppose the motions." The "cc:" notation at the bottom of the letter indicates a copy was sent to Marshack, Anderson, and Virden.

On 12 August 1997, the trustee filed and served a motion to reopen the case to administer the award from the state court action. The motion was served on the U.S. Trustee, DeVore, and DeVore's former attorney, Joseph A. Weber, who had withdrawn from the case on 30 August 1994. Two copies were mailed to DeVore at two different Yorba Linda addresses, her respective residence and business addresses of record.

DeVore did not file an objection to the trustee's motion to reopen, and neither she nor Anderson appeared at the hearing on 2 September 1997. That day the court orally

2. Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C., and all "Rule" references are to the Federal Rules of Bankruptcy Procedure. "FRCP" references are to the Federal Rules of Civil Procedure, and "LBR" references are to the Local Bankruptcy Rules for the Central District of California.

granted the trustee's motion, and a written order reopening the case and withdrawing the Trustee's No Asset Report was entered and served on DeVore's addresses of record on 19 September 1997. The order did not expressly refer to the judgment against Bank of America or to the proceeds of that judgment.

Prior to entry of the written order, on 9 September 1997, Anderson spoke with trustee's counsel, Thomas Casey ("Casey"). At that time, Casey informed Anderson that a motion to reopen had been filed and an order had been signed. Two days later, Anderson went to the Santa Ana bankruptcy clerk's office and requested a copy of the order; he was told the file was not there and was referred to the Laguna Niguel office.

On 22 September 1997, the trustee filed a Notification of Asset Case, and, on 29 September 1997, a Notice of Possible Dividend and Order Fixing Time to File Claims was issued by the clerk.

On 7 October 1997, Virden filed an application for fees of $6,217.33 and costs of $1,971.88 incurred in connection with the state court litigation pursuant to the contingency agreement previously approved by the court. DeVore timely filed an objection to Virden's fee application.

On 9 October 1997, DeVore filed a "Motion for a Court Order Pursuant to 11 U.S.C. § 725 (or other statute) Directing Trustee Richard Marshack to Release the State Court Litigation Proceeds and For Findings." The trustee timely filed an objection to this motion.

Virden's fee application and DeVore's motion were both heard by the court on 28 October 1997. At the hearing, the court denied DeVore's motion for release of litigation proceeds and approved Virden's fees. DeVore timely filed notices of appeal of both orders.

## ISSUES

A. Whether the trustee's motion to reopen was properly served on debtor.

B. Whether the order reopening the case and withdrawing the no asset report was effective to bring the litigation proceeds back into the estate.

C. Whether the court's denial of debtor's motion for release of proceeds was an abuse of discretion.

D. Whether the award of final fees to special counsel in the state court litigation and authorization of payment from the state court litigation proceeds was an abuse of discretion.

## STANDARD OF REVIEW

The bankruptcy court's conclusions of law are reviewed de novo, and its findings of fact are reviewed under the clearly erroneous standard. *In re Johnston,* 49 F.3d 538, 540 (9th Cir.1995). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990).

On appeal, a bankruptcy court's award of attorneys' fees will not be disturbed absent a finding that the court abused its discretion or erroneously applied the law. *In re Reimers,* 972 F.2d 1127 (9th Cir.1992).

## DISCUSSION

A. *Service.*

DeVore argues that the trustee's motion to reopen did not provide "valid notice" to her, as it was served on her old addresses. The order reopening the case is not on appeal, and this due process issue becomes significant only if the reopening order had the effect of undoing the abandonment.

Mailing a notice by first class mail to a party's last known address is sufficient to satisfy due process. *See In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 736 (5th Cir.1995). In *Eagle Bus,* a creditor who failed to keep the debtor apprised of changes in her mailing address was "herself to blame" for not receiving notice of the claims bar date. *Eagle Bus,* 62 F.3d at 736. Here, the debtor left her address of record in 1994. The case remained open until 1 November 1996, yet she did not file a change of address with the court until September of 1997. LBR 105(e)

provides in relevant part: "It shall be the responsibility of the debtor ... to ensure that the ... master mailing list ... [is] complete and correct." Arguably, Marshack had actual knowledge of DeVore's new address, if it is assumed he received the copy of her 4 August letter. However, the pleadings were served by trustee's counsel, who, not unreasonably, served the addresses on the court's mailing matrix, which the debtor had not updated.

Additionally, the debtor's letter of 4 August indicates she knew the trustee intended to file a motion to reopen the case to administer the state court litigation proceeds. "Whatever is notice enough to excite attention and put the party on his guard and call for inquiry, is notice of everything to which such inquiry may have led." *In re Gregory,* 705 F.2d 1118, 1123 (9th Cir.1983). The trustee's motion was filed and served on 12 August 1997; DeVore or her counsel could have obtained copies of the relevant documents from the court's file in time to respond. Moreover, Anderson had actual notice of the order before the appeal period expired (indeed, before the written order had been entered). While it appears he unsuccessfully attempted to obtain a copy of the order, the record does not indicate any further attempts to do so or why these were or were not fruitful.

In light of the above, we agree with the bankruptcy court that DeVore was thoroughly on notice of the trustee's position, and that she received adequate notice of the proceedings. Respecting the orders on appeal, DeVore does not assert any defect in notice of Virden's fee application, and the order denying release of the proceeds was on her motion.

B. *Did the Court's Order Reopening the Case and Withdrawing the No Asset Report Bring the Litigation Proceeds Back into the Estate?*

DeVore argues that the trustee's abandonment of the litigation proceeds via the no asset report and closing of the case is irrevocable, thus the bankruptcy court's order reopening her case and withdrawing the no asset report was of no effect. She further argues that the doctrine of laches bars the trustee from asserting control over the proceeds, and that the bankruptcy court abused its discretion in not making a ruling on her request for prejudgment interest on the proceeds.

Abandonment of estate property is governed by § 554, which provides:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

11 U.S.C. § 554 (West 1998).

In the absence of an order directing abandonment, subsection (c) deems abandoned to the debtor any scheduled property of the estate that is unadministered at the close of the case. 5 *Collier on Bankruptcy* ¶ 554.02[7] (Lawrence P. King ed., 15th ed.1997). This is generally referred to as a technical abandonment. *In re Shelton,* 201 B.R. 147, 154 (Bankr.E.D.Va.1996). Unlike abandonment under § 554(a) or (b), an abandonment under § 554(c) occurs automatically upon case closure, without notice or hearing.

A number of cases recognize a general rule that abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value than previously believed. *In re Lintz West Side Lumber, Inc.,* 655 F.2d 786, 789 (7th Cir.1981); *In re Ozer,* 208 B.R. 630, 633 (Bankr.E.D.N.Y. 1997); *In re Gracyk,* 103 B.R. 865, 867

(Bankr.N.D.Ohio 1989); *In re Atkinson,* 62 B.R. 678, 679 (Bankr.D.Nev.1986); *In re Enriquez,* 22 B.R. 934, 935 (Bankr.D.Neb.1982). These cases do not distinguish between technical abandonment under § 554(c) and abandonment under §§ 554(a) or (b) after notice and hearing. *But see Shelton,* 201 B.R. at 156 (distinguishing *In re Sutton,* 10 B.R. 737 (Bankr.E.D.Va.1981), which involved an express abandonment). The rationale for the general rule is that once an asset has been abandoned, it is no longer part of the estate and is effectively beyond the reach and control of the trustee. *E.g. Ozer,* 208 B.R. at 633. Courts have also noted the policy of preserving finality. *E.g. Gracyk,* 103 B.R. at 867.

Notwithstanding the general rule, the prefatory language of § 554(c), "unless the court orders otherwise," indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise. *Shelton,* 201 B.R. at 155. The statute does not limit such an order to the period prior to case closure, *Shelton,* 201 B.R. at 155; *In re Neville,* 192 B.R. 825, 832 (D.N.J.1996), and courts have set aside technical abandonments in "appropriate circumstances." *Shelton,* 201 B.R. at 155. "Appropriate circumstances" have been found where the trustee is given false or incomplete information about the asset by the debtor; the debtor fails to list the asset altogether; or where the trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will result in revocation of the abandonment. *Ozer,* 208 B.R. at 633 (citations omitted). Likewise, we observed in *Gross v. Petty (In re Petty),* 93 B.R. 208, 212 (9th Cir. BAP 1988), that where an asset was not disclosed in the bankruptcy petition, the case was never fully administered within the meaning of § 350(a), and therefore not properly and finally closed under that section. In essence, these cases depend on a finding that the property in question was not properly scheduled, and thus the § 554(c) requirement was not met, or on equitable considerations.

Here, the court ordered the case reopened and the no asset report withdrawn. We disagree with the trustee that the order negated the technical abandonment and brought the litigation proceeds back into the estate. While the motion to reopen was for the purpose of administering the litigation proceeds, and the notice so indicated, the order did not expressly revoke abandonment of the litigation proceeds. We fail to see how the reopening of a bankruptcy case and withdrawal of a no asset report, without more, negate a valid technical abandonment. The reopening of a case is "merely a ministerial or mechanical act which allows the court file to be retrieved from the stacks of closed cases to enable the court to receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the case." *In re Germaine,* 152 B.R. 619, 624 (9th Cir. BAP 1993).

Notwithstanding the ministerial nature of the act, courts have held that reopening a bankruptcy case puts the bankruptcy estate back into the process of administration and revives the original case. *Bumb v. Bonafide Mills, Inc.,* 327 F.2d 544, 547 (9th Cir.1964); *Figlio v. American Management Services, Inc. (In re Figlio),* 193 B.R. 420, 424 (Bankr. D.N.J.1996) (citing *In re Cassell,* 41 B.R. 737, 740 (Bankr.E.D.Va.1984)). According to some courts, this includes the negating of a technical abandonment under § 554(c). *Compass Bank for Savings v. Billingham (In re Graves),* 212 B.R. 692, 695 (1st Cir. BAP 1997); *Shelton,* 201 B.R. at 155. Our conclusion that the order reopening DeVore's case and withdrawing the trustee's no asset report was insufficient to bring the litigation proceeds back into the estate appears to be at odds with these cases. However, both *Graves* and *Shelton* are distinguishable, as those cases are in the equitable revocation category.

*Shelton* involved a motion to reopen a case to administer tenancy by the entirety property where the court concluded the married debtors' separate filings were an attempt to shield that property from administration for the benefit of joint creditors. *Shelton,* 201 B.R. at 153. The court was concerned that the trustee "may not have been afforded the ability to make an informed decision with respect to administering the ... property due to the state of the information contained

within Mr. Shelton's schedules." *Id.* at 155. The court rejected the debtor-husband's argument that abandonment was irrevocable and that the property could not be "unabandoned" by reopening his bankruptcy case. By extending the rule that reopening revives all procedural and substantive rights of the debtor, the court concluded that reopening revives the procedural and substantive rights of the trustee and "revives the trustee's right to administer all property that was in the estate prior to the initial closure." *Id.*

In *Graves,* the case was reopened 11 days after closing to allow the trustee to administer a lawsuit. A creditor argued that the reopening did not restore technically abandoned real property to the estate. The Bankruptcy Appellate Panel for the First Circuit disagreed, citing *Shelton* for the proposition that an order reopening a case negated the technical-abandonment. *Graves,* 212 B.R. at 695. The case had been reopened in 1993, 11 days after closing, to allow the trustee to administer a state lawsuit relating to environmental contamination, and the reopening was not challenged. Three years later, after the trustee obtained a judgment of almost $1 million, which was to be used solely for cleaning up the property in question, the creditor sought a determination that the property was not within the estate or relief from stay. The panel noted:

> What was once a potentially worthless piece of property due to environmental contamination may now be a valuable asset of the bankruptcy estate. Not until the Trustee obtained the judgment in 1996 did the Bank express any interest in the property, even though, pursuant to the stipulation, the Bank had grounds in 1991 to obtain relief from the automatic stay because of the Debtors' default. In the years prior to the judgment, the Bank refused to take action to repossess the property, to clean up the property, or to fund any part of the litigation against Packer.

*Graves,* 212 B.R. at 694–695. There are no similar equitable considerations in this case, and, as noted, the asset has been scheduled.

The withdrawal of the no asset report does not change our analysis. The order withdrawing that report did not change the facts that (1) the judgment was not otherwise administered, and (2) the case was closed. Those facts equal abandonment under § 554(c), unless the court ordered otherwise.

When DeVore's case was closed, it had been fully administered under the Code and thus was "properly and finally closed." The state court litigation had been administered, but not disposed of. It was listed on the debtor's schedules, and the trustee hired counsel on behalf of the bankruptcy estate, who obtained judgment in the state court. The trustee was aware of the judgment when he filed his no asset report: in response to the debtor's motion for release of proceeds, the trustee indicated he then knew of the judgment. Although the trustee argued before the bankruptcy court that the settlement check was a "newly discovered asset[,]" this argument was not advanced on appeal. We do not address it here.

The order, which did not mention the judgment or its proceeds, reopening the case and withdrawing the no asset report did not negate the technical abandonment and bring the judgment proceeds back into the estate: the court has never expressly "order[ed] otherwise," and having not done so, the technical abandonment stands. We do not here decide whether a court can, for equitable reasons, or because of the trustee's inadvertence, set aside a valid technical abandonment: those issues must await other cases.

C. *Denial of Motion for Release of Proceeds.*

DeVore's motion for release was based on the premise that the order reopening the case was not effective to revoke the abandonment because of the general rule that abandonment is irrevocable. The bankruptcy court was unconvinced:

> [I]t might well have been reasonable to leave [the state court judgment] unadministered and allow the case to be closed in the event it was never funded, but since it has funded, to open it and [give] notice that claims can be filed and make proper distribution. In my view, then, it's appropriate to deny the motion of the debtor to require a release of the funds.

We understand these remarks refer to leaving the case closed, rather than to closing the case, as the judge had shortly before entered the reopening order, and the motion papers recounted that fact. Of course, the trustee could have accomplished this result by requesting an order excepting the judgment from abandonment prior to closing. *In re Hart,* 76 B.R. 774 (Bankr.C.D.Cal.1987); *In re Prospero,* 107 B.R. 732 (Bankr.C.D.Cal. 1989).

Because the court's ruling was based on an erroneous view of the law, in that it did not take into consideration the validity of the abandonment, denying the debtor's motion for release of the proceeds was an abuse of discretion.

D. *Attorney's Fee Award.*

DeVore argues, among other things, that the fee award was improper because there were no bankruptcy estate funds from which to pay the award. She argues that Virden should be compensated from estate funds, as he was representing the estate rather than the debtor and that the fees should not come from this award because they are not estate funds. However, DeVore concedes she owes Virden $942.00 for services performed on her behalf after the bankruptcy case was closed.

 Abandonment removes the asset from the jurisdiction of the bankruptcy court. *Sherrell v. Fleet Bank of New York (In re Sherrell),* 205 B.R. 20, 22 (N.D.N.Y.1997) (citation omitted). We agree with DeVore that the fee award was improper to the extent it is an award from the abandoned proceeds of the state court judgment.

At this point, the payment of Virden's contingency fee is an issue between an ex-debtor and a non-party respecting non-estate property. That is a matter to be resolved by agreement or in another, non-bankruptcy, forum.

E. *Remaining issues.*

Because of our ruling, we need not consider the debtor's laches argument, but the issue of prejudgment interest remains. The bankruptcy court did not rule on DeVore's request for prejudgment interest. That issue remains for determination on remand.

CONCLUSION

The order reopening the case and withdrawing the no asset report was not effective to bring the litigation proceeds, technically abandoned under § 554(c), back into the estate for administration by the trustee. Consequently, the court should have granted the debtor's motion to release the litigation proceeds to her. Further, the court had no jurisdiction to award fees from the litigation proceeds.

We REVERSE both orders and REMAND for further proceedings in accordance with this opinion.