In re Robert Joseph ADAIR and Jeanie
Louise Adair, Debtors.

Gilbert R. Vasquez, Chapter
7 Trustee, Appellant,

v.

Jeanie Louise Adair, Appellee.

BAP Nos. CC–99–1644–PMoW,
CC–99–1645–PM0W.
Bankruptcy No. SV 96–13793 GM.
Adversary No. SV 99–01557–GM.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 17, 2000.

Filed Sept. 7, 2000.

Jon M. Kasimov, Haight, Brown & Bonesteel, Santa Monica, CA, for Gilbert Vasquez, Chapter 7 Trustee.

Alan I. Nahmias, Plotkin & Rapoport, A.I.P.C., Encino, CA, for Jeanie Louise Adair.

Before PERRIS, MONTALI, and WILLIAMS,[1] Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge.

Approximately three years after closure of this bankruptcy case, the chapter 7[2] trustee moved to reopen the case to recover the proceeds of the settlement of a personal injury lawsuit the trustee knew about and chose not to administer. The trustee also sought a preliminary injunction prohibiting Debtor from transferring or disposing of settlement funds. The bankruptcy court denied both the motions

---

1. Hon. Patricia C. Williams, Chief Bankruptcy Judge for the Eastern District of Washington, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankrupt-

cy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

on the basis that the trustee had abandoned the estate's interest in the lawsuit when the case was closed. We AFFIRM. We reject the trustee's contention that a debtor has an ongoing duty to update information provided in his or her bankruptcy schedules even though the trustee has not requested additional information.

## FACTS

Appellee Jeanie Louise Adair ("Debtor") filed a chapter 7 petition in April of 1996.[3] She disclosed her interest in a personal injury lawsuit (the "Lawsuit") on her Schedule B. Debtor's Schedule B stated that:

> Debtor ... was involved in a slip and fall personal injury accident at work. Recovery is uncertain at this time. $20,000 is listed herein for exemption purposes only.

At the § 341(a) meeting of the creditors, Appellant Gilbert R. Vasquez (the "Trustee") questioned Debtor regarding the Lawsuit and requested additional information from Debtor's personal injury attorney. Debtor's personal injury attorney responded to the Trustee's request in a letter dated June 11, 1996. The letter reported that Debtor's accident occurred on May 12, 1995 and stated the following:

> [W]e have filed a Personal Injury Cause of Action on [Debtor's] behalf in the hopes of finding some additional liability. The case number is PC 016 113Y. At this time, recover [sic] is speculative at best since liability rests on a small cut out or broken piece of a brick on an exterior staircase that plaintiff stepped on which caused the fall. Whether the defendant had notice of this condition at the time of the accident has not been determined at this time. We are in the

beginning stages of said litigation and the opposition is denying liability. The injury is already covered by Workmen's Compensation. Obviously, workmen's compensation will have a lien on any recovery.[4] I believe this case will go to trial because of the contested responsibility of the premises owner.

Debtor's personal injury attorney closed the letter by inviting the Trustee to call if he had further questions.

The Trustee made no further inquiries regarding the Lawsuit. Instead, he prepared a Report of Trustee in Chapter 7 No Asset Case (the "Report") dated June 27, 1996. In the Report, the Trustee states that there are no assets to administer and that he "made a diligent inquiry" into Debtor's assets and that "the assets scheduled and not claimed exempt are encumbered beyond value, are otherwise of negligible value and the trustee asserts no interest in them." The Trustee filed his Report on September 16, 1996. The bankruptcy court closed Debtor's case on October 10, 1996.[5] This caused an abandonment of the Lawsuit under § 554(c).

Debtor settled the Lawsuit for approximately $430,000. There is no dispute that Debtor received all settlement funds after closure of her case. The first notice of settlement was filed in state court on November 8, 1996. The second notice of settlement was filed in state court on July 1, 1997.[6]

Almost three years after closure of Debtor's case, the Trustee initiated an adversary proceeding against Debtor to compel her to turn over the proceeds of the settlement. The Trustee filed two motions in association with his attempt to recover the proceeds of the settlement of the Lawsuit: (1) a motion for a temporary re-

---

3. Debtor filed her chapter 7 petition with her now deceased husband. For ease of reference, we only refer to Debtor.

4. There is no information in the excerpts of record indicating whether or to what extent the recovery was encumbered.

5. There is nothing in the record to indicate whether Debtor received notice of the Trustee's report or the closure of her case.

6. The two settlement notices involved settlements with different defendants.

straining order preventing Debtor from disposing of any of the proceeds of the settlement of the Lawsuit and for an order to show cause regarding a preliminary injunction and (2) a motion to reopen Debtor's case and revoke the abandonment of the Lawsuit. The bankruptcy court granted the Trustee's motion for a temporary restraining order and set a hearing date on the Trustee's motions to reopen and for preliminary injunction.

At the hearing, the Trustee argued that the information supplied to him regarding the Lawsuit was misleading and that Debtor had an ongoing duty to advise him of developments in the Lawsuit. The bankruptcy court rejected the Trustee's arguments and entered two orders. In the first order, the bankruptcy court denied the Trustee's motion to reopen the case and revoke the abandonment of the Lawsuit. In the second order, the bankruptcy court dissolved the temporary restraining order, denied the Trustee's request for a preliminary injunction and dismissed the adversary proceeding. The Trustee timely appealed from both orders.

## ISSUE [7]

Whether the bankruptcy court erred in refusing to reopen Debtor's case and revoke the abandonment of the Lawsuit.

## STANDARD OF REVIEW

█ A bankruptcy court's decision on a motion to reopen a bankruptcy case is reviewed for an abuse of discretion. *In re Cortez*, 191 B.R. 174, 176 (9th Cir. BAP 1995). A bankruptcy court's determination with regard to the revocation of an abandonment is also discretionary. *In re*

---

*DeVore*, 223 B.R. 193, 198 (9th Cir. BAP 1998). A reviewing court will not reverse a bankruptcy court's discretionary decision unless it is left with a definite and firm conviction that the court below committed a clear error of judgment. *Id.*

## DISCUSSION

Section 350(b) governs the reopening of a case and provides that a case may be reopened to administer assets, to accord relief to the debtor or for other cause. In this case, the Trustee moved to reopen Debtor's case and to revoke his abandonment of the Lawsuit so that he could administer the settlement proceeds.

The abandonment of estate property is governed by § 554. Section 554(c) "deems abandoned to the debtor any scheduled property of the estate that is unadministered at the close of the case." [8] *DeVore*, 223 B.R. at 197. The abandonment of an asset under § 554(c) is commonly referred to as "technical abandonment." *Id.; In re Menk*, 241 B.R. 896, 913 (9th Cir. BAP 1999). There is no dispute that the Lawsuit was property of the estate, that Debtor scheduled the asset and that the Lawsuit was abandoned upon closure of Debtor's case. Rather, the Trustee contends that the case should be reopened because revocation of the abandonment is warranted.

█ In *DeVore*, 223 B.R. at 197, we noted the general rule that "abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value than previously believed." *See also* 5 Lawrence P. King, COLLIER ON BANKRUPTCY

---

7. Although the Trustee timely appealed from both orders, the focus of this appeal is on the propriety of the bankruptcy court's decision denying the Trustee's motion to reopen Debtor's case and revoke the abandonment of the Lawsuit. The Trustee does not raise any issues concerning the second order, presumably because the bankruptcy court's decision denying the Trustee's motion to reopen Debtor's case and revoke the abandonment of the

Lawsuit moots the other issues raised by the Trustee before the bankruptcy court.

8. Section 554(c) provides that:

Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.

¶ 554.02[3] (15th ed. Rev.1999); 3 William L. Norton, Jr., NORTON BANKRUPTCY LAW AND PRACTICE 2D § 53:2 (1994). The general rule of irrevocability is not absolute and, in *DeVore,* we acknowledged that courts have discretion to revoke an abandonment in appropriate circumstances. *DeVore,* 223 B.R. at 198. Revocation of abandonment is appropriate when the trustee is misled by false or incomplete information. *Id.; In re Shelton,* 201 B.R. 147 (Bankr.E.D.Va.1996)(revocation of § 554(c) abandonment appropriate where trustee not able to make an informed decision because of inaccurate scheduling of asset); *In re Atkinson,* 62 B.R. 678 (Bankr.D.Nev.1986)(exception to irrevocability rule where asset not scheduled or is otherwise concealed from trustee). In considering a motion to revoke abandonment of an asset, it is appropriate to consider the length of time between closure of the case and the request to reopen. 2 NORTON BANKRUPTCY LAW AND PRACTICE 2D § 34:5. *See also Atkinson,* 62 B.R. at 680 ("Bankruptcy cases must at some point be closed with finality.").

On appeal, the Trustee advances two arguments in support of his position that revocation of the abandonment of the Lawsuit is warranted. First, the Trustee argues that the information provided by Debtor and her personal injury attorney regarding the Lawsuit was misleading. Second, the Trustee claims that Debtor had an ongoing duty to advise him of developments in the Lawsuit prior to closure of her case. We are not persuaded by either argument.

### 1. *The Bankruptcy Court Did Not Err in Rejecting the Trustee's Argument that Debtor Provided Him with Misleading Information*

■ The Trustee argues that he was misled because Debtor falsely valued the Lawsuit at $20,000 in her Schedule B. The Trustee's factual premise is incorrect. Although Debtor's Schedule B indicated in the value column that the value of the Lawsuit was $20,000, it also clearly stated in the description column that the recovery was uncertain and that the reference to $20,000 was for exemption purposes only. Debtor, in effect, stated that the value of the Lawsuit was unknown as of the date she signed her schedules. The mere fact that Debtor indicated that the value of the Lawsuit was essentially unknown does not mean that she misled the Trustee [9] or that he was deprived of sufficient information so as to preclude him from performing his duties. *See Atkinson,* 62 B.R. at 680.

The Trustee also argues that the statement in the letter from Debtor's personal injury attorney that recovery was "speculative at best" misled him as to the value of the Lawsuit. The Trustee claims that use of the phrase "speculative at best" amounted to a representation that the Lawsuit had "little if any value." [10] The Trustee ignores the fact that the letter stated that recovery was speculative, not that the Lawsuit was valueless. The use of the phrase by Debtor's personal injury attorney simply communicated his belief that, as of the date of the letter, liability was uncertain. The letter said nothing about

**9.** There is nothing in the record to indicate that Debtor knew the ultimate value of the Lawsuit at the time she completed her schedules.

**10.** The Trustee, in footnote 6 of his opening brief, cites numerous cases in support of his position. Although all of the cases cited by the Trustee contain the phrase "speculative at best," they use the phrase to communicate the uncertain nature of various events. The cases do not equate use of the phrase "speculative at best" with a representation that something

has "little if any value." *See, e.g., In re Mallard Pond Ltd.,* 217 B.R. 782, 790 (Bankr.M.D.Tenn.1997)(feasibility of proposed chapter 11 plan "speculative at best"); *In re Engel,* 190 B.R. 206, 211 (Bankr.D.N.J.1995)(denying fee application by chapter 11 debtor's criminal counsel because benefit to estate "speculative at best"); *In re Nkongho,* 59 B.R. 85, 86 (Bankr.D.N.J.1986)(outcome of state court action "speculative at best").

the possible value of recovery, should it occur.

We conclude that the bankruptcy court did not err in rejecting the Trustee's argument that the information supplied by Debtor and her personal injury attorney was false and misleading at the time it was provided.

2. *Debtor Did Not Have an Ongoing Duty to Provide the Trustee with Updated Information About the Lawsuit*

The Trustee also argues that Debtor had an ongoing obligation to provide him with updated information concerning developments in the Lawsuit. Specifically, the Trustee claims that key information was revealed in a deposition taken on August 21, 1996, and that Debtor had a duty to inform him of this fact. In addition, the Trustee suspects that an offer of settlement was made prior to the closure of Debtor's case and insists that Debtor had the duty to report any such settlement offer to him.[11] We are not persuaded by the Trustee's argument.

The Bankruptcy Code and Rules require that a debtor supplement the information in his or her schedules only in limited circumstances.[12] Section 541(a)(5) provides that certain types of property not implicated here become property of the estate if acquired by a debtor within 180 days of the filing of the bankruptcy petition. Rule 1007(h) requires that a debtor file a supplemental schedule in the event that he or she acquires property covered by the provisions of § 541(a)(5). Thus, the Bankruptcy Code specifically requires that a debtor supplement the information contained in his or her schedules in certain prescribed circumstances. If Congress or the Bankruptcy Rule drafters had intended to impose a broader duty of ongoing disclosure, either could have expressly so provided.

The Trustee relies on § 521(3) and (4), neither of which supports his position.[13] Section 521 sets forth a debtor's duties. Subsection (3) requires that a debtor cooperate with the trustee as necessary to enable the trustee to perform his or her duties. Subsection (4) requires that a debtor turn over to the trustee all property of the estate and any recorded information related to property of the estate. Absent a trustee's express request for additional or ongoing information, § 521 does not impose upon a debtor the ongoing obligation to provide information to the trustee with regard to assets that the Debtor clearly disclosed in her bankruptcy schedules.[14]

The Trustee argues that Debtor's alleged duty to provide ongoing information is analogous to the duty imposed on a party to supplement responses to discovery requests when the party learns that his or her prior response is in some material respect incomplete or incorrect, even though the response was complete and accurate when made. The fundamental problem with Trustee's argument is that, unlike Fed.R.Civ.P. 26(e), which imposes a specific duty to supplement discovery responses, nothing in the Bankruptcy Code or Rules imposes upon a debtor the ongoing duty of supplementation advocated by the Trustee.[15] The absence of a specific

11. There is no evidence in the record establishing when any settlement offers were made.

12. Rule 1009, which governs the amendment of schedules, is entirely permissive absent a court order to the contrary.

13. The Trustee argued to the bankruptcy court that the "continuing duty" arose under § 541(a)(5) and Rule 1007(h). The Trustee does not rely on those provisions on appeal.

14. None of the cases cited by the Trustee in support of his argument that § 521(3) and (4) create an ongoing duty of disclosure involves the revocation of a technical abandonment pursuant to § 554(c).

15. This omission is notable in view of the history of the duty of supplementation under Fed.R.Civ.P. 26. Prior to adoption of Fed. R.Civ.P. 26(e) the courts were split as to whether there was a continuing duty to supplement responses to discovery requests. *See Fed.R.Civ.P. 26 advisory committee's note to*

requirement of ongoing supplementation is especially significant given that Fed. R.Civ.P. 26(e) serves as a clear model if either Congress or the drafters of the Bankruptcy Rules intended to impose upon debtors a duty of continuing disclosure in circumstances such as presented in this case. We decline to find a general ongoing obligation of supplementation in the absence of an express provision in the Bankruptcy Code or the Rules imposing such a requirement.[16]

The chapter 7 debtor is already obligated to fully and accurately disclose all assets when she files her schedules and statement of affairs. The trustee has the ability to, in effect, establish his or her own "discovery" rules and time lines with regard to obtaining additional information concerning assets of the estate. A chapter 7 trustee has at least three options. First, the trustee may make an explicit request for additional information.[17] A debtor must comply with such a request in accordance with § 521(3). Second, a trustee may at any time seek a court order allowing him to examine a debtor pursuant to Rule 2004. Finally, a trustee may adjourn the § 341 meeting of the creditors pending the receipt of satisfactory information from the debtor.

The Trustee bore the burden of acting if he wanted further updated information about the Lawsuit. His failure to request such information, and his decision to abandon, which decision he now regrets, do not mean that the bankruptcy court abused its discretion in refusing to reopen Debtor's case and revoke the Trustee's abandonment of the Lawsuit.[18] A bankruptcy case should not be reopened to allow recovery of an asset that the trustee decided not to pursue. *See* 3 COLLIER ON BANKRUPTCY ¶ 350.02[1]. *See also Atkinson,* 62 B.R. at 680 (a bankruptcy court should not reopen a case to recover an asset that a trustee made a deliberate informed decision not to administer). We are not left with a definite and firm conviction that the bankruptcy court committed a clear error of judgment in refusing to reopen Debtor's case and revoke the Trustee's technical abandonment of the Lawsuit, especially given the length of time that passed in this case between closure of Debtor's case and the Trustee's motion to reopen.

## CONCLUSION

Debtor had a personal injury lawsuit, the value of which was uncertain at best, when she filed her case. She revealed the Lawsuit on her schedules and provided the information the Trustee requested. While

---

1970 amendment to subdivision (e). The addition of subdivision (e) resolved that split in favor of a continuing duty to supplement discovery responses.

**16.** The Bankruptcy Code and Rules require that the schedules contain information that is accurate as of the date the petition is filed. *See* 4 Lawrence P. King, COLLIER ON BANKRUPTCY ¶ 521.03[3] (15th ed. Rev. 1999). A debtor who learns that the information supplied in his or her schedules was inaccurate as of the petition date has a duty to correct that information, and we do not suggest otherwise. In this case, there is no indication that Debtor's statement that the value of the Lawsuit was effectively unknown but for exemption purposes was valued at $20,000.00 was inaccurate as of the date she filed her petition. Rather, the value became ascertainable based upon postpetition events.

**17.** This opinion should not be construed to condone Debtor's prosecution of a claim prior to the Trustee's abandonment of the claim. The Trustee owned the Lawsuit until he abandoned it at case closure.

**18.** The Trustee discusses three cases that he claims are factually similar to this case. Only one, *In re Neville v. Harris,* 192 B.R. 825 (D.N.J.1996), has any factual similarity to the matter before the Panel. In *Neville,* the bankruptcy court made a discretionary decision to revoke a technical abandonment based on facts that are similar to those presented in this case. The district court affirmed the bankruptcy court's exercise of discretion. While *Neville* provides some support for the Trustee's position, it does not mean that a court that decides to the contrary abuses its discretion.

the information provided about the value of the Lawsuit was somewhat vague, it was not misleading. Liability was far from clear. The Trustee did not ask for further information and permitted the case to be closed as a no asset case. Absent a request for further information from the Trustee, Debtor did not have a duty to provide further information. The bankruptcy court did not abuse its discretion in refusing to reopen the case three years thereafter to permit the Trustee to administer the proceeds from settlement of the Lawsuit. We AFFIRM.