
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>DEEPA B. WILLINGHAM,<br>　　　　　　Debtor. | BAP Nos.　CC-23-1105-FGC<br>　　　　　　CC-23-1184-FGC<br>　　　　　　(Related) |
| DEEPA B. WILLINGHAM,<br>　　　　　　　Appellant,<br>v.<br>C. RICHARD WILLINGHAM; JERRY<br>NAMBA, Trustee,<br>　　　　　　　Appellees. | Bk. No. 9:20-bk-10858-MB<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Martin R. Barash, Bankruptcy Judge, Presiding

Before: FARIS, GAN, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Deepa B. Willingham appeals from the bankruptcy

court's docket entry closing her chapter 7 case in March 2023, arguing that

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

the chapter 7 trustee failed to administer certain claims against her then-husband. She also challenges orders concerning the sale of her residence and disposition of her homestead exemption that were entered in 2020 and 2021 and orders sustaining the trustee's objections to her proofs of claim that were entered in 2022.

Ms. Willingham is laboring under an incorrect view of the bankruptcy process. She says that she filed her bankruptcy petition because she expected that the chapter 7 trustee would protect her in a dispute with her then-husband. But the chapter 7 trustee's primary duty is to generate money with which to pay creditors and return to the debtor any assets that cannot or need not be liquidated for that purpose. In this case, the chapter 7 trustee did his job: he sold enough assets to pay Ms. Willingham's creditors in full; and when the court closed the bankruptcy case, the remaining assets of the estate became Ms. Willingham's property again. Ms. Willingham can now pursue whatever claims she has against her ex-husband. She cannot force the trustee to pursue those claims for her.

Ms. Willingham also believes that, at the end of her case, she is entitled to appeal from any orders entered during the case. She is mistaken: the time to appeal many of the orders she challenges expired long ago.

We AFFIRM the closing of the case, and we DISMISS as untimely her appeal from the orders disposing of her homestead exemption and her proofs of claim.

## A.    Ms. Willingham's bankruptcy petition

Ms. Willingham filed an individual chapter 7 petition in July 2020. She disclosed that she was in the process of divorcing her estranged husband, Charles Richard Willingham. Appellee Jerry Namba was appointed chapter 7 trustee ("Trustee").

Ms. Willingham scheduled three pieces of real property:

- Her residence in Solvang, California ("Solvang Property") that she valued at $2.2 million. She claimed a $175,000 homestead exemption and indicated her intention that the Trustee sell the Solvang Property.

- A condominium unit in Houston, Texas ("Texas Property") that she described as her husband's residence that he had allegedly acquired with community assets. She indicated her intention to surrender the property.

- A single-family home in San Bernardino, California ("San Bernardino Property") that her husband had inherited; she claimed that he used community assets to pay the mortgage. She indicated her intention to surrender the property.

She also scheduled claims against her husband for allegedly transferring nearly $300,000 in community assets without her knowledge

---

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

or consent. Alternatively, she asserted an equitable interest in the accounts and property allegedly funded with community assets.

Ms. Willingham received her discharge on October 26, 2020.

**B.    The motion to sell and distribution of the homestead exemption**

In November 2020, the Trustee filed a motion to sell the Solvang Property ("Motion to Sell") and pay to Ms. Willingham the $175,000 homestead exemption; no one had objected to her claimed exemption.

Mr. Willingham filed a response to the Motion to Sell. He admitted that the Solvang Property was estate property but asserted that he had a community claim against a substantial portion of the net sale proceeds.

On or around November 30, 2020, Mr. Willingham filed a chapter 7 bankruptcy petition in Houston, Texas. The Trustee filed a supplemental brief to address the effect of Mr. Willingham's bankruptcy case and urged the court to deny Mr. Willingham's claim to the sale proceeds.

After a hearing, the bankruptcy court entered its order ("Sale Order") on December 11, 2020, authorizing the Trustee to sell the Solvang Property for $1.9 million. The court directed escrow to disburse $87,000 of the homestead exemption to Ms. Willingham and ordered the Trustee to hold the balance of the exemption.

At a further hearing regarding the disbursement of the sale proceeds, the bankruptcy court tentatively ruled that the Texas bankruptcy court should decide the disposition of the remainder of the homestead exemption. Ms. Willingham's counsel agreed:

4

[U]pon further thought after reviewing all the pleadings, I think your analysis is correct. I don't think that this is property of the bankruptcy estate anymore. And I don't really think that the California bankruptcy court really has jurisdiction to decide where the money goes.

So as it stands, granting the relief requested by the trustee and allowing the homestead exemption to go to the debtor makes sense and then whatever the Texas trustee decides to do, then Ms. Willingham will have to file an appropriate pleading in response to that.

On February 19, 2021, the bankruptcy court issued a supplemental order ("Supplemental Sale Order") authorizing the Trustee to pay Ms. Willingham the $88,000 balance of her homestead exemption, unless the Texas bankruptcy court ordered otherwise. Ms. Willingham did not appeal from the Sale Order or the Supplemental Sale Order within fourteen days after entry of those orders.

About a month later, the Trustee filed a Motion to Disburse Funds. He reported that the Texas bankruptcy court had ordered that the $88,000 balance be delivered to the chapter 7 trustee in that case. Ms. Willingham did not object to this motion, so the bankruptcy court entered an order ("Disbursal Order") granting the Motion to Disburse Funds on April 9, 2021. Ms. Willingham did not appeal from the Disbursal Order within fourteen days after its entry.[3]

---

[3] Ms. Willingham says that she later received $12,500 of the $88,000 portion transmitted to Mr. Willingham's bankruptcy trustee.

## C.     The Trustee's Final Report

On May 25, 2022, the Trustee filed the Trustee's Final Report in which he stated that he had administered the estate and that "[a]ll scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property . . . or have been or will be abandoned pursuant to 11 U.S.C. § 554." He stated that he had realized gross receipts of approximately $1.9 million and that the estate retained a balance of $269,422.89 available for distribution. He reported that he had enough money to pay all unsecured claims in full and return a surplus to Ms. Willingham. (Ultimately, the Trustee distributed over $100,000 to Ms. Willingham.)

Additionally, the Trustee noted that the San Bernardino Property and the Texas Property had been fully administered.[4]

The Trustee filed a notice of the Trustee's Final Report and hearing. The notice advised that objections to the Trustee's Final Report must be filed no later than fourteen days before the hearing and that "[u]ntimely objections may be deemed waived." Ms. Willingham's counsel received electronic notice of the Notice of Trustee's Final Report. No one objected to the Trustee's Final Report.

## D.      Ms. Willingham's proofs of claim

On June 16, 2022, Ms. Willingham filed five proofs of claim. (This was

---

[4] The Trustee also included a notation that Mr. Willingham had sold San Bernardino Property postpetition.

6

almost seventeen months after the November 2, 2020, deadline to file a proof of claim.) Claims 6 through 8 implicated claims that she allegedly held against her husband or his interest in the San Bernardino Property and Texas Property. Claim 9 asserted a claim for "exemption for rental deposit," and Claim 10 sought reimbursement for removal of solar panels from the Solvang Property.

The Trustee objected to Ms. Willingham's proofs of claim. He argued that her claims were against her husband, who was not a debtor in the case; moreover, she could not be a creditor of herself and could not maintain a claim against her own estate. Finally, the proofs of claim were untimely, as they were filed over a year after the claims bar date and over ten days after the Trustee's Final Report.

E.   **Hearings on the Trustee's Final Report and the claim objections**

The bankruptcy court held a hearing on the Trustee's Final Report. On July 25, 2022, the court entered the Order on Final Fee Applications, which approved payment to the Trustee and his professionals.

Three days later, the Trustee filed a motion to amend the Trustee's Final Report to seek additional compensation for his efforts to object to Ms. Willingham's late proofs of claim.

The bankruptcy court held a hearing on the claim objections on August 25, 2022. Ms. Willingham appeared pro se.[5] The bankruptcy court

---

[5] Around this time, Ms. Willingham's attorney withdrew as counsel, pursuant to an order entered August 1, 2022.

explained to Ms. Willingham that it was improper for her to file proofs of claim against her own estate. But it discovered that, although Ms. Willingham's counsel had received a copy of the Trustee's Final Report, she may not have seen the report. It set the matter for further hearing to allow Ms. Willingham a chance to review the Trustee's Final Report and directed her to file a response indicating whether she had an objection.

On August 30, 2022, the bankruptcy court entered orders sustaining the Trustee's claim objections ("Claim Objection Orders").

The bankruptcy court held a continued hearing on October 13, 2022. Ms. Willingham did not file any document prior to the hearing and appeared at the hearing pro se. We do not have a transcript of the hearing, so we do not know what the court or Ms. Willingham said. But the court later entered a written order in which it noted that no one had filed an opposition and granted the motion to amend.

F.     **The docket entry closing the bankruptcy case**

On March 9, 2023, the Trustee filed his Final Account and Distribution Report. He reported that all funds had been distributed pursuant to the Trustee's Final Report and that the case was fully administered.

The following day, on March 10, 2023, the bankruptcy court entered the following docket entry ("Docket Entry") closing the case:

Bankruptcy Case Closed - CHAPTER 7 ASSET. Pursuant to the

8

Trustee's Final Account and Distribution Report Certification that the Estate has been Fully Administered and Application to be Discharged, it is ordered that the above case be closed. No objections having been made by the United States Trustee, the trustee is discharged and the bond is exonerated.

The docket entry does not include an electronic signature of a judge or clerk. There was no separate written order closing the case.

## G.   Ms. Willingham's appeal

Over a month later, on April 12, 2023, Ms. Willingham filed a notice of appeal from the Docket Entry closing the bankruptcy case and a motion to extend time to appeal. She indicated that she intended to appeal from the March 10, 2023 Docket Entry closing her case. She acknowledged that her notice of appeal was past the fourteen-day deadline; however, she argued that she was allowed an additional twenty-one days under Rule 8002(d) for excusable neglect because she did not receive notice of the Docket Entry closing the case until April 3, 2023.

On November 9, 2023, after the bankruptcy court granted Ms. Willingham's "motion for an extension of time for the Debtor to file a notice of appeal of the closing of the bankruptcy case," Ms. Willingham filed another notice of appeal, which we construed as an amended notice of appeal.

On December 1, 2023, Ms. Willingham filed yet another notice of

9

appeal that expanded the scope of the earlier notices of appeal.[6]

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). Subject to our discussion below, we have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether Ms. Willingham's appeal is timely.

Whether the bankruptcy court erred in closing the bankruptcy case even though the Trustee did not prosecute Ms. Willingham's alleged claims against her husband.

## STANDARD OF REVIEW

We review for an abuse of discretion the bankruptcy court's decision to authorize or deny abandonment of estate property or to prevent a technical abandonment. *See Viet Vu v. Kendall (In re Viet Vu)*, 245 B.R. 644, 647 (9th Cir. BAP 2000) ("[T]he court's decision to authorize or deny abandonment is reviewed for an abuse of discretion." (quoting *Johnston v. Webster (In re Johnston)*, 49 F.3d 538, 540 (9th Cir. 1995)); *DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 198 (9th Cir. BAP 1998) ("[C]ourts have discretion to affect or prevent technical abandonment simply by ordering

---

[6] At oral argument, Ms. Willingham presented two documents for consideration. We do not consider late-filed documents, particularly where they attempt to state facts that, as far as the record reveals, she never brought to the bankruptcy court's attention. However, even if we were to consider Ms. Willingham's submissions, they would not alter our decision.

otherwise."). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested[,]" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

## DISCUSSION

Because Ms. Willingham is not an attorney and is not represented by counsel, she is unfamiliar with the appellate rules and with the limits on this Panel's jurisdiction. Because we have a duty to determine whether and to what extent we have jurisdiction to consider her appeal, we must address the procedural problems. But even if she had not committed any procedural errors, her appeal would not succeed, because the Trustee did what bankruptcy trustees are supposed to do.

## A. The Docket Entry

Congress has given the BAP jurisdiction to hear appeals "from final judgments, orders, and decrees[.]" § 158(a)(1). The Ninth Circuit has stated that "[a] disposition is final if it contains 'a *complete* act of adjudication,' that is, a full adjudication of the issues at bar, and clearly evidences the judge's intention that it be the court's final act in the matter." *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 307 (9th Cir. 1990); *see Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020) ("By providing for appeals

11

from final decisions in bankruptcy 'proceedings,' as distinguished from bankruptcy 'cases,' Congress made orders in bankruptcy cases . . . immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy case. In short, the usual judicial unit for analyzing finality in ordinary civil litigation is the case, but in bankruptcy, it is often the proceeding." (cleaned up)).

The Docket Entry is not in the usual form of a judgment, order or decree. But "[e]ven a minute entry order can be a final, appealable order 'if it fully adjudicates the issues and clearly evidences the court's intent that the order be the court's final act.'" *Key Bar Invs., Inc. v. Cahn (In re Cahn)*, 188 B.R. 627, 630 (9th Cir. BAP 1995) (quoting *McDonald v. Sperna (In re Sperna)*, 173 B.R. 654, 657 (9th Cir. BAP 1994)). The Ninth Circuit has determined that "[a] minute entry may constitute a dispositive order for notice of appeal purposes if it: (1) states that it is an order; (2) is mailed to counsel; (3) is signed by the clerk who prepared it; and (4) is entered on the docket sheet." *Ingram v. ACandS, Inc.*, 977 F.2d 1332, 1338-39 (9th Cir. 1992). *Cf. Carswell v. Rojas (In re Carswell)*, BAP No. CC-15-1100-KuKiTa, 2015 WL 8775748, at *5 (9th Cir. BAP Dec. 11, 2015) (remanding the appeal from a docket entry closing the adversary proceeding where "[t]here is no dispositive language in the docket entry to that effect [that it was a dispositive ruling]"). But if the minute order does not meet the above-requirements and "is not followed by a properly entered dispositive order, this court will have appellate jurisdiction when a notice of appeal is filed

12

any time after the district court's ruling." *Id.* at 1339.

The Docket Entry did not include a signature by the judge or clerk, and there was no proof of service indicating that it was delivered to counsel or Ms. Willingham (although she admits that she eventually received notice of the case closure).[7] However, the Docket Entry reflects the bankruptcy court's final intention to close the case after fully adjudicating the issues as bar, and, indeed, the bankruptcy court did not enter a separate, more definitive order from which Ms. Willingham could subsequently appeal. We hold that the Docket Entry is an appealable order and that Ms. Willingham properly appealed from the Docket Entry when she filed her notice of appeal.

Ms. Willingham argues that the Trustee should have pursued her claims against her husband. She asserts that Mr. Willingham "defrauded her on two occasions" with regard to using community assets toward the San Bernardino Property and Texas Property. She claims that the Trustee "did nothing to defend Debtor's claim" and maintains that it was the Trustee's duty "to restore Debtor's property to her[,]" because the "claims of loss due to her spouse's fraud are valid secured claims against the real property in question." We see no error.

When the bankruptcy court closed the case, all of the assets of

---

[7] We also note that the bankruptcy court's order granting the motion to extend time to appeal could arguably indicate that it intended the Docket Entry as a final order and could have led Ms. Willingham to believe that the Docket Entry was an appealable order.

Ms. Willingham's estate, including her claims against Mr. Willingham, reverted to her. Section 554(c) provides that, "[u]nless the court orders otherwise, any property scheduled under section 521(a)(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." *See Schwaber v. Reed (In re Reed)*, 89 B.R. 100, 103 (Bankr. C.D. Cal. 1988) (Under § 554(c), "once the bankruptcy case is *closed*, all scheduled, unadministered, and non-exempt property of the estate is deemed abandoned."), *subsequently aff'd*, 940 F.2d 1317 (9th Cir. 1991). "The abandonment of property of the estate that results from the closing of a case is commonly referred to as a 'technical abandonment' because it occurs automatically, without any notice or hearing." *In re Gonzalez*, 302 B.R. 687, 691 (Bankr. C.D. Cal. 2003).

"[T]he prefatory language of § 554(c), 'unless the court orders otherwise,' indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise." *In re DeVore*, 223 B.R. at 198. We have stated that the bankruptcy court can prevent or undo technical abandonment in "appropriate circumstances," which "depend on a finding that the property in question was not properly scheduled . . . or on equitable considerations." *Id.* In this case, Ms. Willingham has not shown any "appropriate circumstances" warranting reversal of the technical abandonment of her claims and real property. She only states that the Trustee should have pursued the claims against her husband and the

14

properties. But the bankruptcy court correctly declined to require the Trustee to administer Ms. Willingham's purported claims, particularly where the Trustee's administration has already resulted in a surplus estate. *See generally In re Reed*, 178 B.R. 817, 821 (Bankr. D. Ariz. 1995) ("The Trustee is not, however, required to pursue every asset or cause of action belonging to the estate. . . . If the asset is disclosed, and unadministered during the bankruptcy proceeding, it is deemed abandoned once the case has been closed." (citations omitted)); *Jubber v. Bird (In re Bird)*, 577 B.R. 365, 376 (10th Cir. BAP 2017) ("[A] trustee's duty to liquidate property of the estate is not without its limits. In certain situations, such as when liquidation will result in little to no payment to the unsecured creditors, the proper course of action is for a trustee to abandon the property pursuant to § 554.").

Put another way, the Trustee is the "representative of the estate." § 323(a). He is not Ms. Willingham's representative or attorney, and he did not owe her a duty to vindicate her claims against her husband. Section 704 prescribes his duties, and we discern nothing in this appeal that suggests misconduct or a dereliction of those duties. Furthermore, as the Trustee points out, the abandonment of the San Bernardino Property and Texas Property means that Ms. Willingham is free to pursue whatever claims she believes that she has against those properties. In short, she cannot force the Trustee to prosecute her claims for her benefit, and the bankruptcy proceedings did not affect her present ability to prosecute the abandoned

15

claims on her own.

**B.     The Trustee's Final Account and Trustee's Final Report**

The Trustee's Final Account and Trustee's Final Report are not orders or judgments. These documents were merely the Trustee's reports to the court that he had fully administered the estate, including paying creditors as the court had previously approved. They are evidence that the Trustee complied with the Code and the court's orders; they are not orders of the court from which Ms. Willingham could appeal.

Construed liberally, Ms. Willingham might be appealing from the bankruptcy court's approval of the Trustee's Final Report, which it memorialized in the Order on Final Fee Applications on July 25, 2022. This order is a judgment, order, or decree from which one may appeal. *See, e.g., Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Vill. Resort, Ltd.)*, 81 F.3d 103, 105 (9th Cir. 1996) (determining that the order denying the chapter 7 trustee's attorneys' fee application was a final order for purposes of appeal). But, as we explain in the next section, Ms. Willingham filed her notice of appeal too late.

Even if Ms. Willingham had filed a timely notice of appeal, we would still affirm because (as far as the record shows) she failed to present her objections to the bankruptcy court. Ms. Willingham argues that she did not have notice of the Trustee's Final Report, but it is undisputed that her counsel had notice of the Trustee's Final Report and did not object. Additionally, even after the bankruptcy court approved the Trustee's Final

16

Report, it gave Ms. Willingham another opportunity to object to the Trustee's Final Report; yet she failed to do so.[8] Because Ms. Willingham did not timely object to the Trustee's Final Report in the bankruptcy court, she cannot do so now for the first time on appeal. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (stating that we do not consider arguments and allegations raised for the first time on appeal).

## C. The remainder of the appeal

Ms. Willingham argues that the bankruptcy court erred in transferring half of the homestead exemption to the trustee of her husband's bankruptcy estate and denying her proofs of claim. These orders became final months (and sometimes years) before she filed her notice of appeal, and this portion of her appeal must be dismissed as untimely.

Under Rule 8002(a)(1), "[e]xcept as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Subsection (d)(1) allows the bankruptcy court to "extend the time to file a notice of appeal upon a party's motion that is filed[ ]" either "within the time prescribed by this rule[ ]" or "within 21 days after that time, if the

---

[8] In her reply brief and at oral argument, Ms. Willingham complains for the first time about the sale of farm vehicles and a tax return filed by the Trustee. We do not consider arguments not presented in the appellant's opening brief. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). Even if we did consider these arguments, they were untimely and waived for the same reasons stated above.

party shows excusable neglect." Rule 8002(d)(1)(A) & (B). "[T]he 14-day time deadline in Rule 8002(a) is a jurisdictional requirement that acts as an immutable constraint on our authority to consider and hear appeals." *Wilkins v. Menchaca (In re Wilkins)*, 587 B.R. 97, 107 (9th Cir. BAP 2018).

The bankruptcy court's decisions to approve the sale, direct the Trustee to pay approximately half of the homestead exemption to Ms. Willingham, and approve the release of the remainder of the homestead exemption to the Texas trustee implicate the Sale Order, Supplemental Sale Order, and Disbursal Order. Those orders were entered between December 2020 and April 2021. They are final orders that were immediately appealable. *See, e.g.*, *In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940, 955-56 (C.D. Cal. 2019) (holding that a sale order is a final, appealable order under the "pragmatic approach"); *In re Gilman*, 887 F.3d at 961-63 (holding that an order allowing or disallowing an exemption was final as an appealable judgment). Because Ms. Willingham did not file her notice of appeal within the time prescribed in Rule 8002, and in fact initiated this appeal years later on April 12, 2023, her appeal of those orders is untimely.[9] As a result, we lack jurisdiction to consider her appeal of

---

[9] Additionally, Ms. Willingham did not object to the division of the homestead exemption and has waived that issue on appeal. In fact, at the February 2, 2021 hearing, her counsel agreed that the court's analysis was "correct" and stated that "granting the relief requested by the trustee . . . makes sense . . . ." Ms. Willingham did not object to the court's ruling or object to the subsequent agreement between the trustees to turn over the homestead exemption balance to the trustee of her husband's estate.

those orders.

Similarly, Ms. Willingham challenges the bankruptcy court's Claim Objection Orders. She says that she was a creditor, had a secured interest in the Texas Property, and was entitled to moving expenses.

The Claim Objection Orders were final orders entered on August 25, 2022. *See, e.g.*, *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 307 (9th Cir. 1990) (holding that the order on appeal was a "complete act of adjudication" because it was an order "sustaining the trustee's objections to the debtors' amended exemption claim, finally resolved all issues regarding the claimed exemption"). Ms. Willingham's notice of appeal on April 12, 2023 was half a year beyond the outer limit to seek an extension of time to appeal. Thus, the appeal of the Claim Objection Orders was also untimely, and we lack jurisdiction over that portion of her appeal.[10]

Ms. Willingham may think that the bankruptcy court's order granting her an extension of time to appeal gave her carte blanche to appeal from any order. However, the bankruptcy court only granted the "motion for an extension of time for the Debtor to file a notice of appeal of the **closing of the bankruptcy case** . . . ." (Emphasis added.) It did not purport to allow a timely appeal of any other order. Moreover, it could not have extended the time to appeal those orders even if it wanted to do so.

---

[10] Even if this appeal were timely, we would easily affirm. Ms. Willingham cannot be a creditor of her own estate. She was probably trying to assert claims against her husband, but a proof of claim in her case was not a correct way to do that.

Ms. Willingham had to file her motion to extend time no later than thirty-five days after the entry of the orders she wished to appeal. Rule 8002(d)(1)(B). She waited between seven months and two years, so her motion filed on April 12, 2023, was untimely.

## CONCLUSION

The bankruptcy court did not err in closing the case without requiring the Trustee to prosecute claims against Mr. Willingham. Accordingly, we AFFIRM that portion of the appeal. Additionally, Ms. Willingham's appeal was untimely as to the orders concerning the sale of the Solvang Property, the disposition of the homestead exemption, and the Trustee's objections to her proofs of claim. We thus DISMISS the remainder of the appeal.