In re Alan BERNARD; Linda Bernard, Debtors.

Alan BERNARD; Linda Bernard, Plaintiffs–Appellants,

v.

Jeffrey C. COYNE, Chapter 7 Trustee; Clement Sheaffer; Mary Sheaffer, Defendants–Appellees.

No. 93–55255.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1994.

Decided Nov. 21, 1994.

Richard M. Moneymaker, Moneymaker & Kelly, Los Angeles, CA, for plaintiffs-appellants.

William C. Sias, (argued) Epstein, Becker & Green, Los Angeles, CA, Robert G. Uriarte, (on the briefs) Milner, Uriarte & Lorch, Pasadena, CA, and Jamie R. Schloss, Los Angeles, CA, for defendants-appellees.

Before: D.W. NELSON, BEEZER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

This bankruptcy case presents both a procedural and a substantive question: first, whether objections to a debtor's claimed exemptions were timely under Bankruptcy Rule 4003(b); and second, whether a fully matured annuity policy is exempt under California law.

## I

On October 7, 1991, Alan and Linda Bernard filed for relief under Chapter 7 of the Bankruptcy Code. Among the assets they claimed as exempt were $5000 in recently earned wages and a $250,000 annuity policy. As part of a process that has come to be known as pre-petition planning, the Bernards had extracted most of the value from their home by borrowing against the equity, and then, just ten days before filing for bankruptcy, bought the annuity with the borrowed money.

The Chapter 7 trustee convened the meeting of creditors under 11 U.S.C. § 341(a) on November 13, 1991. Understandably suspicious of the Bernards' annuity exemption claim, the trustee asked to see documents relating to the policy. Because the Bernards didn't have the documents with them, the trustee adjourned the meeting until December 2. He instructed the Bernards to bring the requested documents on that date or, preferably, to mail them to his office beforehand.

On December 2 the Bernards didn't show up. According to their attorney, Mrs. Bernard didn't attend because she thought the trustee had already been given the necessary documents; Mr. Bernard was recuperating from a serious operation.[1] On December 4, the trustee informed the Bernards that he was still waiting for the requested documents, particularly a copy of the annuity policy. After receiving some materials relating to the annuity but not the policy itself, the trustee notified the Bernards that the 341(a) meeting would reconvene on April 6, 1992. Though the Bernards attended this meeting, they again did not provide a copy of the annuity policy. The trustee filed a written objection to the Bernards' annuity exemption later that same day. After one additional continuance, the trustee concluded the 341(a) meeting on April 27.

On May 8, the debtors amended their list of exempt property by adding a car and a union pension fund. On June 5, the Sheaffers objected to the Bernards' exemption claims. The bankruptcy court held a consolidated hearing on July 1 to determine the validity of the trustee's and creditors' objections. At the hearing, the Bernards argued that all the objections were untimely under Bankr.R. 4003(b), because they had been filed more than thirty days after the conclusion of the 341(a) meeting. The bankruptcy court rejected this argument and sustained each of the objections. The Bernards then appealed to the district court, which affirmed the bankruptcy court's ruling.[2]

## II

Bankruptcy Rule 4003(b) states: "The trustee or any creditor may file objections to

---

**1.** The Sheaffers, major creditors, dispute whether Mr. Bernard was disabled on the date of the meeting, but this is beside the point. The period within which to object to exemption claims remains open until 30 days after the 341(a) examination is concluded. A debtor's failure to show up for a scheduled 341(a) meeting, even if it is fully excused, will require a rescheduling of the meeting so the trustee can complete the examination. This automatically extends the time for creditors to object. Unexcused failure to attend a 341(a) meeting can, of course, result in sanctions, such as dismissal of the petition, *see* U.S.Bankr.Ct.Gen.Order 93–01 (C.D.Cal.), or assessment of the trustee's costs.

**2.** Though the Bernards initially claimed a $100,000 homestead exemption, they've effectively conceded that under Cal.Civ.Proc.Code § 704.730 they're entitled only to a $75,000 exemption. ER 474; Appellants' Opening Br. 28–29. The Bernards nonetheless contend that, by virtue of this exemption, their entire house should be excluded from the bankruptcy estate. We've twice rejected this argument. *See In re Hyman*, 967 F.2d 1316, 1319–20 (9th Cir.1992); *In re Reed*, 940 F.2d 1317, 1321 (9th Cir.1991). As we noted in *Reed*, Cal.Civ.Proc.Code § 704.730 merely gives debtors the right to a specified amount of money after a forced sale; it does not give debtors "an absolute right to retain the homestead itself." 940 F.2d at 1321. And, while Cal.Civ.Proc.Code § 704.800 does under some circumstances prevent the trustee from selling the debtor's homestead, it does so only when the bids received at the sale are less than the sum of all liens and encumbrances on the property plus the amount of the debtor's homestead exemption. *Hyman*, 967 F.2d at 1320. Thus, nothing in the California exemption statutes precludes the trustee from proceeding with a forced sale, even if the debtors' valuation of their home suggests that no equity is available for creditors. The trustee is merely barred from completing the sale if no bids above a minimum threshold are received. *Id.* at 1320 & n. 9. The Bernards' line of argument is now deemed foreclosed in this circuit. *Cf.* Fed.R.App.P. 38; Bankr.R. 9011.

the list of property claimed as exempt within 30 days after the conclusion of the [section 341(a) meeting] or the filing of any amendment to the list ... unless, within such period, further time is granted by the court." The Bernards claim that none of the objections was timely because the 341(a) meeting concluded on November 13, or at the latest on December 2, 1991, while the objections weren't filed until April 6 and June 5, 1992. The trustee contends that his objection was timely because the meeting didn't conclude until April 27.

■ The Bernards' argument that the 341(a) meeting concluded on November 13 is based on the following language in a recent Supreme Court case: "Rule 4003(b) gives the trustee and creditors 30 days from the *initial* creditors' meeting to object." *See Taylor v. Freeland & Kronz,* —— U.S. ——, ——, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992) (emphasis added). Because the initial session of the creditors' meeting occurred on November 13, the Bernards argue, that's when the 30–day objection period began to run. We have no difficulty rejecting this argument. Bankruptcy Rule 2003(e) recognizes that the creditors' meeting can't always be completed in one session. It thus authorizes the trustee to adjourn the meeting "to enable the debtor to give additional testimony or to enable creditors to conduct additional examination." Bankr.R. 2003(e) cmt. e.

Because the trustee and creditors may need to obtain information beyond that provided at the initial session before deciding whether to object, Bankr.R. 4003(b) starts the 30–day clock at the *conclusion* of the 341(a) meeting; the term "conclusion" would be superfluous if the rule contemplated that the 30–day objection period would always begin after the initial session.[3] *Taylor* didn't address this issue; the Court there referred to the "initial creditors' meeting" because the meeting happened to conclude after one session. The initial session in *Taylor* thus marked both the beginning and the end of the 341(a) examination. Here, the debtor concedes that the trustee continued the November 13 meeting to December 2—as he was entitled to do if he believed that the purposes of the 341(a) examination had not been fulfilled.

■ The Bernards' alternative contention—that the 341(a) meeting concluded on December 2—is also unpersuasive. The meeting could not conclude on that date because the Bernards never showed up. When the trustee exercised his power under Rule 2003(e) to adjourn rather than conclude the November 13 meeting, he reserved the right to make further inquiry into the Bernards' financial affairs. By failing to attend the meeting, the Bernards frustrated the trustee's entirely legitimate effort to determine whether the debtors' claimed exemption was valid. They thereby forfeited any right to have the meeting conclude on that date.[4]

■ In light of the Bernards' failure to appear, the 341(a) examination period remained open and the trustee was entitled to schedule another meeting to complete the examination. After efforts to obtain the an-

---

**3.** Starting the objection period after the initial 341(a) examination would also create perverse incentives for debtors to withhold information in the hope that the creditors will overlook a valid objection. Here, for example, debtors failed to bring documents relating to a major exemption claim to the November 13 meeting, even though the annuity policy had been purchased only a few weeks earlier. That debtors did not produce a copy of the policy until several months after the November 13 meeting, and eventually forced the trustee to raise an objection without examining the policy, raises a strong inference of manipulation.

**4.** Even if debtors attend a 341(a) meeting and provide the requested information, the information may prove inadequate, or it may point to other sources. The trustee therefore has broad discretion whether to adjourn or conclude the meeting. Of course, the trustee may keep the 341(a) examination open only so long as there are legitimate grounds for believing that further investigation will prove fruitful. If debtors believe the trustee has extended the 341(a) examination period for illegitimate reasons, their remedy is to petition the bankruptcy court for closure of the objection period. The objection period, however, remains open until 30 days after one of the following events: (a) the trustee concludes a 341(a) meeting without expressly continuing it to a later date, Bankr.R. 2003(e); (b) the trustee sends written notification to all those on the service list that the 341(a) examination period is closed; or (c) the bankruptcy court orders the examination period closed.

nuity documents through debtors' counsel proved unsuccessful, the trustee decided to resume the creditors' meeting on April 6 and then again on April 27. Because the trustee did not continue the meeting further, the last day for raising objections to the debtors' exemption claims was May 27.

■ The trustee's objection to the annuity was filed well before that date and thus was clearly timely. The creditors, on the other hand, didn't file their objections until June 5, which was too late. A new 30–day objection period did begin to run when the debtors amended their list of exempt property on May 8, but only with respect to the exemptions added via the amendment. *See, e.g., In re Kazi,* 985 F.2d 318, 323 (7th Cir.1993); *In re Payton,* 73 B.R. 31, 33 (Bankr.W.D.Tex. 1987); *see also* 8 Lawrence P. King, Collier on Bankruptcy ¶ 4003.04[1], at 4003–10 (15th ed. 1994). Because the creditors' objections didn't pertain to either of the exemptions added by the amendments,[5] their June 5 objections were untimely. Because only the creditors objected to the Bernards' $5000 wage exemption claim, the bankruptcy court erred in denying the Bernards this exemption. *See Taylor,* — U.S. at —, 112 S.Ct. at 1648.

### III

■ We turn, then, to the one timely objection: the trustee's to the Bernards' annuity. The Bernards first claim the annuity is exempt under Cal.Civ.Proc.Code § 704.100(a) as an unmatured life insurance policy.[6] Relying on our decision in *In re Moffat,* 959

F.2d 740 (9th Cir.1992), the trustee counters that the annuity at issue here is fully mature and thus governed not by section 704.100(a), but by section 704.100(c).[7] This dispute over the applicable provision doesn't matter, however, because the relevant language of the two subsections is identical and has been conclusively construed by our recent decision in *In re Pikush,* 157 B.R. 155 (9th Cir. BAP 1993), *aff'd,* 27 F.3d 386 (9th Cir.1994).[8] There, we held that "the exemption provided by section 704.100(c) is limited to life insurance policies," and thus that annuity contracts which do not involve any "risks, contingencies or unknown events" are not covered by section 704.100(c) at all. *See* 157 B.R. at 159.

Applying this reasoning to the identical language in section 704.100(a), we conclude that the Bernards' annuity is not exempt. Like the annuity contracts in *Pikush,* the Bernards' annuity provides a guaranteed stream of income over the term of the contract. There are no contingencies that can divest the Bernards of their right to receive payment; should Mr. Bernard die during the life of the contract, all remaining payments will be made to his designated beneficiaries. As noted in *Pikush,* an annuity of this nature is an investment, not a life insurance policy. *See id.* Because section 704.100 only applies to life insurance policies, the Bernards' annuity is not exempt under this provision.

■ The Bernards next argue that their annuity is exempt under Cal.Civ.Proc.Code § 704.115.[9] Annuities are exempt under this

---

5.  In their Motion Objecting to Claim of Exemptions, the creditors did object to one of the newly-added exemption claims, the amendment relating to the car, *see* SER Tab 5, at 107–08, but the Bernards conceded during the bankruptcy court hearing that they weren't entitled to this exemption, ER 474.

6.  This section provides: "Unmatured life insurance policies (including endowment and annuity policies), but not the loan value of such policies, are exempt without making a claim."

7.  Cal.Civ.Proc.Code § 704.100(c) provides: "Benefits from matured life insurance policies (including endowment and annuity policies) are exempt to the extent reasonably necessary for the support of the judgment debtor and the spouse and dependents of the judgment debtor."

8.  Though *Pikush* is a decision of our Bankruptcy Appellate Panel, we affirmed its ruling and incorporated its reasoning in a published opinion. *See* 27 F.3d at 386. It is thus the law of the circuit.

9.  This section provides that individual retirement annuities are "exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires." Cal.Civ.Proc.Code § 704.115(e).

provision only to the extent necessary to provide for the support of the debtor and the debtor's spouse and dependents upon retirement. The bankruptcy court found that the annuity payments weren't necessary for the Bernards' support. ER 496–97. This finding is not clearly erroneous. The record indicates that Mr. Bernard, who is now 60 years old, earns in excess of $200,000 annually as a sound technician at Paramount Studios, and that he can expect to earn this amount for the next several years. In addition, the Bernards are entitled to substantial income from other sources upon retirement, including Social Security and pension benefits. The bankruptcy court therefore correctly held that the Bernards' annuity is not exempt under Cal.Civ.Proc.Code § 704.115.

**AFFIRMED IN PART** and **REVERSED IN PART.**

