**In re James F. CLARK, aka Frank J. Clark, Debtor.**

**Chubb & Son, Inc., Federal Insurance Company, Vigiliant Insurance Company, and Traveler's Surety and Casualty Corporation, Appellants,**

**v.**

**James F. Clark, aka Frank J. Clark, Charles W. Daff, Chapter 7 Trustee, Appellees.**

**BAP Nos. CC–00–1424–MoBK, CC–00–1425–MoBK.**

**Bankruptcy No. SA 99–14201–LR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Feb. 21, 2001.

Filed April 20, 2001.

Charles E. Wheeler, Cosen & O'Conner, San Diego, CA, for Chubb & Sons, Inc., Federal Insurance Company, Vigilant Insurance Company.

William M. Burd, Burd & Naylor, Santa Ana, CA, for James F. Clark.

Douglas D. Kappler, Robinson, Diamant and Wolkowitz, Los Angeles, CA, for Traveler's Surety and Casualty.

Before MONTALI, BRANDT and KLEIN, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

Recently both the Ninth Circuit Court of Appeals and this panel have criticized the practice of trustees routinely continuing creditors' meetings to indefinite dates absent special circumstances. Nonetheless, we recognize that continuance of the meeting to dates certain can be justified where further investigation of the debtor is necessary. This case demonstrates the importance of distinguishing between unjustified and indefinite continuances and finite continuances where more information must be gathered.

Chubb & Son, Inc., Federal Insurance Company and Vigilant Insurance Company (hereafter "Chubb") and Travelers Surety and Casualty Corporation (hereafter "Travelers") (collectively, "Creditors") appeal from a final judgment of the bankruptcy court denying as untimely their joint objection to the exemption claimed by James F. Clark ("Debtor") in a corporate pension plan. We REVERSE.

### I.

### FACTS

In April 1999, Debtor filed a voluntary Chapter 7[1] petition. In his Schedule C, Debtor listed a $947,000 defined pension plan as exempt. Debtor claimed that the plan was not included in his bankruptcy estate under *Patterson v. Shumate*, 504

U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) and alternatively claimed that the plan was exempt under California Code of Civil Procedure section 703.140(b)(10)(E) (exempting payments under a pension plan "to the extent reasonably necessary for the support" of a debtor and debtor's dependents).

Charles W. Daff ("the Trustee"), the Chapter 7 Trustee, conducted the meeting of creditors pursuant to section 341 and adjourned the meeting from time to time. In all, there were seven dates for the meeting.[2] The Trustee filed his 341(a) Meeting Worksheets following each meeting date, and he sent notices of the continued meeting dates to Debtor's attorney for all of the meetings that occurred after the first meeting on June 3, 1999.

The Trustee and attorneys for Creditors examined Debtor during the meeting on June 24, 1999; after requesting Debtor to produce a copy of the pension plan, the Trustee continued the meeting to July 15, 1999. Debtor did provide the documentation, but inadvertently produced only the odd-numbered pages. Counsel for Chubb and counsel for Travelers attended the July 15 meeting, although Debtor and Debtor's counsel did not. In the course of the July 15 meeting, counsel for Creditors discussed with the Trustee a plan to conduct a Rule 2004 examination of Debtor and to investigate further Debtor's pension exemption.[3] The Trustee told Creditors'

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

2. Specifically, beginning in June 1999, the Trustee called the creditors' meeting on the following seven dates: June 3, June 24, July 15, August 5, September 16, November 18, and December 30, 1999. Debtor appeared only at the June 24 meeting.

3. Even though Creditors filed their ex parte application for examination and production of documents under Rule 2004 on July 15, 1999 (and filed a revised Rule 2004 examination application on August 5, 1999), the bankruptcy court did not enter the order authorizing the Rule 2004 examination until September 1, 1999. Creditors had intended to conduct Rule 2004 examinations of Debtor, Debtor's wife, Debtor's pension plan administrator, Debtor's attorney, and Debtor's accountant from August 23 to August 26, 1999. Because

counsel that he would further continue the meeting at the next scheduled meeting on August 5, 1999, without the necessity of Creditors' counsel appearing.[4] Specifically, the Trustee stated: "So what I want to do is continue this into September beyond August 20. Well, no. We'll do August 5 and then continue it again to hold onto the exemption date .... The next day is August 5 at 11:00 [a.m.]. We will use that as a holding date again .... Nobody needs to show." [5] In reliance on the Trustee's rep-

of the delay of the court's entry of the order, and for the convenience of the witnesses, the Rule 2004 examinations were conducted on November 15, 1999. While not necessary to our decision, we point out that some of the problems in this case might have been alleviated if the court had a more expeditious procedure for handling Rule 2004 requests.

4. As discussed later, Creditors' counsel filed their own declarations describing what occurred at the July 15 meeting. The court refused to consider these declarations, ruling that only a transcript of the meeting would provide the "best evidence" of what occurred there. The bankruptcy court erred in refusing to consider these declarations under *United States v. Gonzales–Benitez*, 537 F.2d 1051, 1053–54 (9th Cir.1976), *cert. denied*, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976) (where content of tapes was not itself a factual issue, but the inquiry concerned the content of recorded conversations, testimony of participants is equally admissible to the tapes and is "sufficient to establish what was said"). The bankruptcy court, however, did eventually consider a transcript providing the same information in conjunction with the Creditors' motion to reconsider the denial of their objections to Debtor's exemptions. Consequently, the court's error in refusing to consider the declaration of Creditors' counsel is harmless.

5. According to a transcription of a taped recording of the July 15 meeting prepared by counsel for Chubb, the following statements were made on the record (emphasis added):

Trustee: Are there gentlemen here on Clark?
Answer (two voices): Yes.
Trustee: Okay. Uh—They're not coming today and I'm going to continue so we don't lose our exemption date and I apologize for not getting that packet up to you guys.... I'm sorry I dragged you down here. I'm really sorry.
Man's Voice: We filed ex parte application for August 23 through the 26.

Trustee: Okay. *So what I want to do is continue this into September beyond August 20. Well, no. We'll do August 5 and then continue it again to hold onto the exemption date.* And are you guys going to employ experts to go through this transfer of these monies? Cause it's really going to take somebody to trace and get all that pension stuff together [two people speak over each other] [inaudible].... and there's no funds in the estate.
Man's Voice—If we are going to have to do that [inaudible] okay.
Trustee—I mean your clients, uh, you guys have uh, it's up to the client if they want to spend the money, but I do not have the wherewithal to do the tracing. *The next day is August 5 at 11:00 p.m. We will use that as a holding date again* and we'll get the stuff in the mail to both of you tomorrow.
Man's Voice: *Will we need to show on the August 5 date?*
Trustee: *No. Nobody needs to show.* And I'm really sorry.
Man's Voice—That's okay.
Trustee—It's a case that I'm interested in. It's a case that I'm interested in just because of the mechanics of the transfer. There are some cases like *In re: Maw* and pension cases to hold the ERISA qualification as he transfer [sic] all that money through that new corporation that we need help on. You know, who's the administrator? Who's in control? Is it his alone? Did he take any loans? You know what I mean. What are the elements to the ERISA to make this maintained income. 401k. But then there is a Ninth Circuit case called *Witwer* under 704.115a. Private retirement. Even if it is not ERISA qualified, it can act as a private retirement altogether. An that's a Ninth Circuit case.
Woman's Voice—[inaudible]
Trustee—So we've got a mesh of qualifications under ERISA, which is real complicated and then it [inaudible] but if he is the sole guy in the plan and it is designated as a private retirement plan under California ex-

resentation, counsel for Creditors did not attend the August 5 meeting.

As the Trustee's statements indicate, he continued the July 15 meeting to August 5, 1999, and announced his intent to continue the meeting further on August 5. The Trustee's worksheet from the July 15 meeting is consistent with the transcript and shows that the August 5 date is a "holding date." [6] The Trustee's July 15 notice to Debtor's counsel also indicated that August 5 was a holding date.

Neither Debtor, Creditors, nor their respective attorneys appeared at the August 5 meeting, and the complete tape transcript of the hearing reads as follows:

Trustee: Is James Clark [Debtor] here?

Voice(s) other than Trustee: That's a holding date.

They're not going to be here.

No other statement is made on the record of the August 5 meeting pertaining to Debtor's case. The Trustee, however, filed a declaration indicating that he had, at the August 5 meeting, continued the meeting until September 16, 1999. The transcript is not consistent with the Trustee's statement; no statement was made one way or the other regarding a continuance or a conclusion of the meeting.

On the day following the August 5 meeting, the Trustee filed a "Trustee's 341(a) Meeting Worksheet" on which he checked a box stating that the meeting was concluded. On August 17, 1999, counsel for Chubb sent the Trustee a letter stating that he and counsel for Travelers had attended the July 15 meeting, when the Trustee had indicated that the August 5 meeting would be continued until September 1999. Although the Trustee did not respond to this letter, he did file an "Amended Trustees 341(a) Meeting Worksheet" on August 19, 1999 and served Debtor's counsel with a notice of continued meeting of creditors, showing a September 16, 1999 continuation date.

The Trustee thereafter filed a worksheet and notice of continued meeting in September, and again in November. The Trustee concluded the meeting on December 30, 1999. In the interim, the Rule 2004 examinations of Debtor and others occurred without objection by Debtor in November 1999.

On January 28, 2000, within thirty days of the date the meeting was concluded according to the Trustee's final worksheet, Appellants filed and served their joint motion for order including Debtor's defined pension plan in the bankruptcy estate and partially disallowing Debtor's claim of exemption for defined pension plan (the "Ex-

emptions, but we start with [inaudible] like conveyance issues, you know, transferring out and transferring up. That's the price for ERISA. Then you get into the cases like *Moffat*, I don't know, I'm not sure about these, I'll have to think of these. But there are cases where on the eve of the bankruptcy, they go ahead and [inaudible], blow up into an IRA and blow up into the plan. An then the plan has to take a stand on the tie for amunity [sic]. That's the kind of stuff you're looking at.
Man's Voice—[inaudible]
Trustee—I think you guys more [inaudible] than I do. You've got lots of names behind you. Okay, thank you. An we will safely mail them tomorrow. [Inaudible] And you'll get another notice continue this thing yet. But I'm going to need your help. If you're going to do anything, I'm going to rely on you guys.
Man's Voice—Okay.
Trustee—Alrighty. Thank you.

6. In this context a "holding date" means a meeting date set for the purpose of keeping open the exemption objection period, even though actual examinations of a debtor under section 341 will not occur.

emption Motion").[7] In the Exemption Motion, citing *Watson v. Proctor (In re Watson)*, 161 F.3d 593 (9th Cir.1998), Creditors argued that Debtor's plan was not subject to ERISA and thus fell outside the scope of *Patterson*. Creditors further contended that the funds in Debtor's plan in excess of $630,000 were not necessary for Debtor's support and thus not exempt.

Debtor opposed the Exemption Motion, arguing that Creditors' motion was untimely because the 341(a) meeting had been concluded on August 5, 1999 and not on December 30, 1999. Debtor did not oppose the Exemption Motion on substantive grounds, instead indicating that he would amend his exemptions if the court found the Exemption Motion to be timely.[8] In support of his position, Debtor referred to the Trustee's August 6 worksheet indicating that the meeting had been concluded on August 5, 1999. Additionally Debtor argued that "no continued date was announced" at the August hearing, and that the "docket in this case still reflects that the 341(a) hearing was concluded on August 5, 1999." [9]

Creditors filed a timely reply, and the day before the hearing of the motion, Creditors submitted a declaration from the Trustee confirming the Trustee's agreement with Creditors on July 15 to continue the 341(a) meeting to September. The court refused to consider the Trustee's declaration because it was not timely filed under local rules.[10]

At the hearing on the Exemption Motion, the court denied the Exemption Motion as untimely. The court held that the creditors' meeting had been concluded on August 5, 1999 because (1) the Trustee filed a worksheet stating that it was concluded and (2) the Trustee failed to announce a continuance date on the record. Citing *DeVore v. Marshack (In re DeVore)*, 223 B.R. 193 (9th Cir. BAP 1998), the bankruptcy court stated that an administrative or ministerial error that effectually changes a party's rights and interests cannot be rectified by the court. The court therefore ruled that Creditors' right to object to Debtor's exemptions terminated thirty days following the August 5 meeting. In essence, the court reasoned that a ministerial or clerical error on the part of the Trustee cannot be corrected where such an error potentially affects the rights of a party.

Creditors filed timely motions for reconsideration, and the court entered an order

---

7. Generally, a party challenges a claim of exemption by simply filing an objection in accordance with Rule 4003(b). *See Canino v. Bleau (In re Canino)*, 185 B.R. 584, 591 (9th Cir. BAP 1995) (informal objection does not satisfy Rule 4003).

8. Debtor noted that if the bankruptcy court considered the Exemption Motion as timely, he would simply amend his exemption to claim the plan as exempt under California Code of Civil Procedure section 704.115 (which exempts certain private retirement plans without limiting the exemption to amounts reasonably necessary for support).

9. While the docket sheet does show an entry on August 6, 1999, stating "Trustee worksheet; meeting concluded," it also shows two entries on August 19, 1999, indicating that the worksheet was amended and that the meeting was continued to September 16, 1999.

10. The court refused to consider the Trustee's declaration because it was not submitted with the Exemption Motion initially. The declaration, however, was filed in response to Debtor's opposition, and refuted the claims of Debtor that the meeting concluded on August 5. The declaration was part of a reply, and the court erred by essentially requiring the moving party to anticipate all possible defenses and to submit evidence refuting such defenses with the initial moving papers. To the extent that the court later considered the declaration in the context of the motion for reconsideration, the error was harmless.

denying these motions on July 6, 2000. At the hearing on the motions for reconsideration, the court held that there was insufficient evidence that the Trustee inadvertently erred in filling out his August 6 worksheet. On July 14, 2000, Creditors filed timely notices of appeal.

## II.

## ISSUE

Whether the bankruptcy court erred in holding that the creditors' meeting concluded on August 5, 1999, and that the Exemption Motion was thus untimely.

## III.

## STANDARD OF REVIEW

■ A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of laws are reviewed *de novo. Smith v. Kennedy (In re Smith)*, 235 F.3d 472, 475 (9th Cir.2000). A lower court's findings are reversible for clear error when the appellate court is left with a definite and firm conviction that a mistake has been committed. *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir. 2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1141, 148 L.Ed.2d 1004 (2001). Mixed questions of law and fact are generally reviewed *de novo. Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 763, 148 L.Ed.2d 665 (2001).

## IV.

## DISCUSSION

■ An individual debtor filing for bankruptcy relief is entitled to claim certain property as exempt. *See* 11 U.S.C. § 522(b) (West 2000); Fed. R. Bankr.P. 4003(a). Any creditor and the bankruptcy trustee may object to the debtor's claimed exemptions. *See* Fed. R. Bankr.P.

4003(b). "However, absent special circumstances, these objections must be filed 'within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a).'" *Smith*, 235 F.3d at 475, *quoting* Fed. R. Bankr.P. 4003(b). If no objections are timely filed, "the property claimed as exempt ... is exempt." 11 U.S.C. § 522(1).

■ The meeting of creditors is held pursuant to section 341 and Rule 2003. Section 341(c) specifically provides that the "court may not preside at, and may not attend, any meeting under this section including any final meeting of creditors." Rule 2003(e) provides that the meeting of creditors may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice. Nonetheless, written notice of an adjourned date is acceptable, particularly where a debtor has not attended the meeting. *Smith*, 235 F.3d at 476 (acknowledging that announcement of new date made after a meeting adjourns is sufficient if announcement is made within reasonable time); *In re Havanec*, 175 B.R. 920, 922 (Bankr.N.D.Ohio 1994) ("Some question has been raised as to whether [the language of Rule 2003(e)] limits the [trustee] to adjournments to a specific date announced at the meeting. This reading seems unduly constrictive. The more natural meaning of the language is that if the date and time of an adjournment are announced at the meeting, no written notice need be given.").

In this case, the bankruptcy court held that by failing to announce a continued date at the August 5 hearing, the Trustee effectively concluded the meeting on that date. The court further held that insufficient evidence existed showing that the Trustee erred in sending out his August 6 worksheet. The court additionally held that, even if the trustee had erred in send-

ing out his August 6 worksheet, it was an irrevocable error under *DeVore.* The bankruptcy court erred in reaching these findings and conclusions.

A. *The Bankruptcy Court Erred In Determining That The Trustee Concluded The Meeting By Failing To Announce A Continued Date At The August 5 Meeting*

█ The Trustee did not, during the course of the August 5 meeting, continue the meeting to another specific date. The court held that, under *In re Hurdle,* 240 B.R. 617 (Bankr.C.D.Cal.1999), the Trustee therefore effectively concluded the meeting on August 5. Contrary to the bankruptcy court's reading of *Hurdle,* however, a creditors' meeting is not concluded merely because a trustee does not specify, on the record and at that meeting, a new meeting date. *Hurdle* simply stands for the proposition that a trustee may not indefinitely continue the creditor's meeting. *Id.* at 622.

█ After the bankruptcy court issued its decision relying on *Hurdle,* the Ninth Circuit decided *Smith,* in which it indicated a section 341 meeting may be effectively continued where a trustee announces the continued date within a reasonable time after the meeting has occurred. *Smith,* 235 F.3d at 476 ("An announcement made after a meeting adjourns may be sufficient, if it is made in a reasonable time."). The Ninth Circuit then noted that "[u]nder any reasonable construction of the rule, a delayed announcement would have to be made at least within thirty days of the last meeting held...." *Id., citing In re Levitt,* 137 B.R. 881, 883 (Bankr. D.Mass.1992) ("Thirty days is ample time in any case for the trustee to at least announce the adjourned date."). In this case, the Trustee announced the continued meeting date on August 19, well within 30 days of the prior meeting date (August 5). This announcement thus was made within a reasonable time under *Smith* and *Levitt.* While the announcement was not made by verbal means at the unattended August 5 meeting, it was made in written form, filed and placed on the court's docket, and served upon all relevant parties.

In *Smith,* the Ninth Circuit (like the bankruptcy court in *Hurdle*) embraced the policy of protecting debtors from indefinitely adjourned creditors' meetings. Such policy concerns are not implicated here, however, because the Trustee did not continue the meeting indefinitely.[11] The *Smith* court emphasized the need for "keeping the bankruptcy process moving by insisting on firm, explicit deadlines" and further noted:

11. In *Moldo v. Blethen (In re Blethen),* 259 B.R. 153 (9th Cir. BAP 2001), a panel of this court acknowledged the ruling in *Smith* and disapproved the trustee's general continuance policy. In *Smith* and in *Blethen,* the trustees intended to leave the 341 meeting open-ended, without a continued date. In *Blethen,* the trustee indefinitely continued the meeting specifically and merely to avoid the strict thirty-day objection deadline of Rule 4003 and *Taylor v. Freeland & Kronz,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992) (deadline for objection to exemption is absolute).

Here the record is replete with evidence that the Trustee was doing exactly the opposite of the *Smith* and *Blethen* trustees. He stated on the record on June 3 that he needed a continuance in order to get information on the debtor's pension plan. He filed worksheets indicating that the continued dates were holding dates. He acknowledged that Creditors were going to take the laboring oar on the review of the claim of exemption once they received the necessary information. He continued the meeting from July 15 to August 5, expressly noting that the latter date was a holding date and that a new date would be set in August or September, after the anticipated Rule 2004 examinations.

The purpose of the creditors meeting is to question the debtor about his debts, and to examine him about his claimed exemptions. Where more information must be gathered, the meeting can be adjourned to a definite time; there is no limit on the number of adjournments.

*Id.* at 478. *See also Bernard v. Coyne (In re Bernard),* 40 F.3d 1028, 1031 n. 4 (9th Cir.1994), *cert. denied,* 514 U.S. 1065, 115 S.Ct. 1695, 131 L.Ed.2d 559 (1995) (trustee "has broad discretion whether to adjourn or conclude the meeting," depending on the degree of satisfactory information provided by the debtor).

■ Here, the Trustee exercised his broad discretion and adjourned the meeting to specific dates to enable Creditors to obtain further information about Debtor's claimed exemptions. The Trustee kept the "bankruptcy process moving" by setting specific dates for the adjourned meetings. He stated at the July 15 meeting that he would continue the meeting as necessary until completion of the investigation by Creditors. The Trustee therefore acted in a manner consistent with the goals of *Smith* and the Bankruptcy Code. The Trustee erroneously noted on his worksheet following the August 5 meeting that the meeting had been concluded, but promptly rectified the error by amending his worksheet and setting and giving notice of a new definite date for the adjourned meeting. As this took place within thirty days of the August 5 meeting, it occurred within a reasonable time as construed by *Smith* and *Levitt.* The policy of having thirty days to announce a new date is not inconsistent with the concept of having thirty days to correct an inadvertent error regarding the status of an adjourned

meeting, particularly where a debtor was not even present at the prior meeting.

Debtor argued (and the bankruptcy court agreed) that the Trustee effectively concluded the meeting because he failed to vocalize his intent to adjourn at all. The record of the August 5 meeting, however, includes a statement (to, not by, the Trustee) that it was a holding date. More importantly, the Trustee did not conclude the August 5 meeting on the record. Debtor was not even present at the August 5 meeting, and had prior notice that the August 5 date was merely a holding date. Because the Trustee had indicated at prior meetings that the August 5 date was merely a holding date and that the meeting would not be concluded before September, and because Debtor was not even present at the August 5 meeting, Debtor's contention that the Trustee's silence regarding adjournment constitutes conclusion is not persuasive. *See Bernard,* 40 F.3d at 1031 (the debtor's contention that a section 341 meeting concluded on a particular date was "unpersuasive" where the "meeting could not conclude on that date because the [debtors] never showed up").

In this case, the Trustee provided written notification fourteen days after the August 5 meeting that the meeting was adjourned to September 16. This written notification was timely under *Smith.*[12] Thus, the meeting did not conclude on August 5, 1999, but concluded on December 30, 1999. The Exemption Motion, made within thirty days of the conclusion of the meeting, was timely.

B. *The Bankruptcy Court Erred In Its Findings Regarding The Inadvertent Nature Of The Trustee's Acts*

■ The court held there was insufficient evidence that the Trustee inadver-

12. If thirty days had passed without a notification of the adjourned date and time, the meeting might have effectively concluded on August 5. The panel does not need to decide this, however, because those are not the facts of this case.

tently erred when he issued his initial worksheet after the August 5 meeting. In essence, the court determined that the Trustee intended to conclude the meeting. Neither the explicit finding nor the implicit finding is supported by the record.

In denying the Creditors' motion to reconsider its denial of the Exemption Motion, the court concluded that "we really have no sufficient testimony to be admitted into evidence for us to conclude that it [the Trustee's initial worksheet following the August 5 hearing] was an error." In the court's view, the Trustee's declaration that the worksheet was inadvertently and erroneously filed is insufficient: "It doesn't say how the error occurred, who did it, who directed that it be filed, why the directions were misunderstood. There isn't any explanation. It's simply a conclusory statement that there was some inadvertence."

If the Trustee were attempting to obtain relief from a judgment or order because of "excusable neglect," an explanation for the error or neglect would be important. Here, however, the Trustee is simply indicating that he did not intend to conclude the meeting in the August 5 hearing.[13] The record (including the transcript of the July 15 meeting), when viewed in its entirety, is consistent with the Trustee's assertion. The record shows that the Trustee knew that the 2004 examinations were pending and that Creditors intended to conduct a further examination into Debtor's entitlement to his claimed exemption. The record additionally shows that at the July 5 meeting the Trustee agreed to continue the meeting until at least September. Moreover, the record shows that the Trustee acted promptly to amend the

worksheet and to set the new meeting date in accordance with his prior statements and agreements. Yet, the court disregarded the content of the Trustee's declaration simply because it lacked details regarding the error. No such explanation is necessary; the record supports the declaration. We are left with a definite and firm conviction that the court made a mistake in finding insufficient evidence of inadvertent error by the Trustee.

## C. *The Bankruptcy Court Erred In Its Application Of DeVore*

■ At the hearing on the Exemption Motion, the court held that under *DeVore*, 223 B.R. 193, the Trustee was bound by his erroneous worksheet indicating that the creditors' meeting was concluded on August 5, 1999. *DeVore*, however, is simply inapplicable here.

The *DeVore* trustee, knowing that the estate held a state court judgment and believing that collection of the judgment would be uneconomical, elected to permit the case to be treated as a no-asset case and subsequently to be closed without taking the additional step of asking the court to order, pursuant to section 554(c), that closing of the case not operate to abandon the judgment. *DeVore*, 223 B.R. at 200. When the judgment debtor later paid the judgment, the trustee responded by having the case reopened, withdrawing his no-asset report, and persuading the bankruptcy court that he could continue to assert jurisdiction over the proceeds. The panel reversed, reasoning that mere reopenings of closed cases and withdrawals of no-asset reports do not revoke the statutory aban-

---

13. The Trustee indicated in his declaration that at the August 5 meeting he continued the meeting until September 16, 1999. The tape recording of the meeting, however, contains no statement regarding a continuance or a conclusion of the meeting. Instead, it simply

indicates that the Trustee was treating the August 5 date as a holding date. While the Trustee was not accurate in his recollection of what was stated on the record of the August 5 meeting, his intent to continue the meeting is demonstrated throughout the record.

donment that occurs under section 554(c) incident to the order closing the case. The panel noted that statutory abandonments are generally irrevocable, although a court can vacate an abandonment where the trustee has been deceived or "where the trustee's abandonment was the result of a mistake or inadvertence." *DeVore,* 223 B.R. at 198.

Because the trustee in *DeVore* had consciously decided not to pursue collection and instead permitted the asset to be abandoned at the time of closing, he could not later change his mind, retroactively concluding that his earlier decision was a mistake. The abandonment was not the result of "mistake or inadvertence." Here, in contrast, the record (in particular, the transcript of the July 15 meeting) indicates that the Trustee consciously decided to continue the creditors' meeting until the investigation of the pension plan was complete, and at least until September. Unlike *DeVore,* where the trustee only asserted a mistake after the known asset turned out to have value, here the Trustee's act of checking the incorrect box on the August 5 worksheet was inconsistent with his conscious and stated objective and was, from the inception, a mere clerical mistake that was promptly rectified. Therefore, *DeVore* does not control this case.

The Trustee's act in sending out the worksheet was an inadvertent error which was promptly corrected—prior to any reliance by debtor on the erroneous worksheet. Under *DeVore,* even the statutorily prescribed result of deemed abandonment can be adjusted if the abandonment resulted from mistake or inadvertence. Even if *DeVore* were to apply, nothing in the decision indicates that a trustee is unable to correct a worksheet entered in error.

Moreover, the trustee's worksheet does not carry the same statutory implications as a report of no assets followed by the closing of the case and the technical abandonment of assets under section 554(c). No statute or rule confers upon a worksheet the legal effect of a formal abandonment under section 554(a) or (b) or the technical abandonment under section 554(c) upon closing of a case.

To the extent that the decision of the court suggests that a court order is always necessary to correct an error of a trustee or other administrative officers, it is wrong. Section 341(c) places firm restrictions on the role of bankruptcy courts in creditors meetings. Requiring a court order to correct ministerial trustee errors in the administration of those meetings takes the court beyond exercising its purely judicial functions and imposes administrative oversight upon the court. Yet section 341(c) was enacted to remove "from the Bankruptcy Judge those administrative functions required under the previous Bankruptcy Act. [Citations omitted]. It is clear, therefore, that the prohibition against judicial attendance was enacted to relieve the Bankruptcy Judge of an obligation incidental to an administrative function." *In re Chandler's Cove Inn, Ltd.,* 97 B.R. 752, 755 (Bankr.E.D.N.Y.1988).

The Trustee had the authority to correct his own administrative error, especially where no judicial action (such as closing the case) had been taken in reliance on the erroneous worksheet and where Debtor was not prejudiced by reliance on the erroneous worksheet (which was promptly corrected).[14] Upon the Trustee's correction of the error, Debtor's remedy would have been to seek relief from the amended no-

---

14. A court's clerical error can be corrected at any time pursuant to Federal Rule of Civil Procedure 60(a). It would indeed be anoma-

lous if trustees were not permitted to correct their own clerical errors.

tice on the grounds of laches or estoppel. Debtor did not do so, and Debtor has not shown that laches or estoppel apply here, nor has he shown any prejudice whatsoever. Debtor could not have reasonably relied on the erroneous August 6 worksheet, especially in light of the Trustee's rapid amendment. In addition, Creditors were entitled to rely on the Trustee's authority to correct his own error, especially where the amendment was consistent with prior statements made by the Trustee and especially where the Trustee told Creditors that they did not need to attend the August 5 meeting. Consequently, the court erred in holding that, to avoid the consequences of the erroneous August 5 worksheet, the Trustee and Creditors should have filed a motion.

Because this case is distinguishable from *DeVore,* because the Trustee's amended August 19 worksheet is consistent with other statements and positions taken on the record of this case, and because the Trustee should be able to correct his own administrative errors (in the absence of judicial reliance on his error, laches or estoppel), the bankruptcy court erred in holding that the parties were bound by the erroneous August 6 worksheet.

## V.

## CONCLUSION

For the foregoing reasons, this panel believes that the bankruptcy court erred in holding that the Exemption Motion was untimely. Accordingly, we REVERSE.