In re Pepi SCHAFLER, Debtor.

Richard J. Spear, as trustee,
Plaintiff and Appellee,

v.

Pepi Schafler, Defendant
and Appellant.

and Related Appeal.

Nos. C 01–0380 MMC, C 01–0535 MMC.

United States District Court,
N.D. California.

June 12, 2001.

A. Charles Dell'Ario, Law Offices of Charles Dell'Afrio, Oakland, CA, for appellant.

Dennis D. Davis, Miriam Khatiblou, Goldberg, Stinnett, Myers & Davis, San Fancisco, CA, for appellee.

## ORDER DENYING DEBTOR'S MOTION TO DISMISS TRUSTEE'S APPEAL; AFFIRMING JUDGMENT OF BANKRUPTCY COURT

CHESNEY, District Judge.

Before the Court are two related bankruptcy appeals filed, respectively, by Pepi Schafler ("Debtor") and by Richard J. Spear ("Trustee"). Debtor appeals the judgment entered on an order granting summary judgment in favor of Trustee, and Trustee appeals the order granting

Debtor's motion to extend time to file a notice of appeal from that judgment. Also before the Court is Debtor's motion to dismiss Trustee's appeal, and Debtor's renewed motion for a stay pending appeal.

Having reviewed the briefs filed in connection with both appeals, as well as the papers submitted in support and in opposition to the motions, the Court deems all matters suitable for decision without oral argument. Accordingly, Debtor's requests for oral argument are hereby DENIED, and the July 6, 2001 hearing on Debtor's motion to dismiss Trustee's appeal is hereby VACATED.

## BACKGROUND

On March 26, 1996, Debtor filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code. (Appellant's Record ("AR") 9, Ex. I.)[1] Debtor attached to the petition Schedule B—Personal Property, and listed the following asset: "Trustee of trust, the beneficiaries of whom are debtor's adult children. Debtor interest: 1.00. Location: In debtor possession." (AR 9, Ex. I, Sched. B at ¶ 19.) Debtor also attached to the petition a Statement of Financial Affairs, in which she stated that she had not transferred any property "within one year immediately preceding the commencement of this case." (AR 19, Attachment of Evid. at 23.) In her petition, Debtor declared "under penalty of perjury that the information provided in [the] petition [was] true and correct." (AR 9, Ex 1 at 2.) On July 5, 1996, the Bankruptcy Court entered a Discharge Order. (AR 9, Ex. M at 1.) A final decree was entered on July 9, 1996, and the case was closed. (Id.)

1. Except as indicated in footnote 2, infra, all references to the record correspond to the documents designated by Debtor in Debtor's Designation of Record on Appeal, filed March 9, 2001.

On April 28, 1998, Trustee moved to reopen the case for the purposes of allowing Trustee to investigate and pursue recovery of potential bankruptcy estate assets which may have been undisclosed. (AR 9, Ex. L.) On May 7, 1998, the Bankruptcy Court granted the motion. (AR 9, Ex. M at 1.) On May 5, 1999, Trustee instituted an adversary proceeding by filing a complaint in the reopened bankruptcy case. (AR 1.) On November 3, 1999, Trustee filed a First Amended Complaint. (AR 2.) The First Amended Complaint sought, *inter alia*, a declaration that certain assets, specifically stock certificates and a condominium, held by the above-referenced trust (hereafter "Max Family Trust") were the assets of the bankruptcy estate. (AR 2 at ¶¶ 8–14, Prayer for Relief at ¶ 1.) Trustee alleged that the Max Family Trust was a sham, that Debtor had transferred her assets for no consideration into the Max Family Trust before filing for bankruptcy, and that Debtor thereafter used the assets of the Max Family Trust as her own property. (AR 2 at ¶¶ 8, 10.)

On November 3, 2000, Debtor filed a motion for summary judgment. (AR 5.) Debtor argued, *inter alia*, that Trustee's cause of action for declaratory relief lacked merit because the bankruptcy estate had irrevocably abandoned such assets to her when the bankruptcy case was closed in 1996. (AR 5 at 7–8.)

On December 4, 2000, Trustee filed opposition and a cross-motion for summary judgment. (AR 7, 8.) With respect to Trustee's declaratory relief cause of action, Trustee argued that Debtor, in 1996, fraudulently concealed her interest in the stock certificates and condominium, and therefore such assets were never properly scheduled. (AR 7 at 19–21: AR 8 at 19.) Trustee argued that under such circumstances, no technical abandonment occurred, and the property remained the assets of the estate. (*Id.*)

At a hearing held December 18, 2000, the Bankruptcy Court made, *inter alia*, the following findings: (1) there was no genuine issue of material fact that the Max Family Trust "was nothing but a sham and a fraud on the Debtor's creditors," (AR 22 at 16:24–25) because the assets of the Max Family Trust were always treated by Debtor as her personal property; and (2) the assets were not "technically abandoned" to Debtor upon closure of the case because "Debtor failed to disclose in her schedules the true value of her interest in the trust which was one hundred percent of over five hundred thousand dollars in stock and a Florida condominium. Instead she listed her interest as being worth one dollar." (AR 22 at 18:1–7.) The Bankruptcy Court granted summary judgment in favor of Trustee on the declaratory relief cause of action. (AR 22 at 18:22–24.)

On December 21, 2000, the Bankruptcy Court filed its Judgment After Cross–Motions for Summary Judgment ("Judgment"), whereby judgment was entered in favor of Trustee on Trustee's claim for declaratory relief, and the following properties were declared the property of the bankruptcy estate: (1) all stocks and bonds held by Trustee that had been turned over to Trustee by Debtor; (2) all stocks and bonds owned by the Max Family Trust as of March 26, 1996, and the proceeds of such stocks and bonds; (3) a Florida condominium as more fully described in an exhibit to the Judgment; and (4) all other property held by Debtor in the name of the Max Family Trust as of March 26, 1996, and its proceeds. (AR 21.)

On January 16, 2001, Debtor filed a motion to extend time to file a notice of appeal pursuant to Rule 8002(c)(2).

(Trustee's AR 4.)[2] On January 17, 2001, the Bankruptcy Court held a hearing to consider Debtor's motion, at which time it granted the motion. (Trustee's AR 12). The Bankruptcy Court also ordered counsel for Debtor to pay $1,000 to counsel for Trustee to compensate Trustee for its costs incurred in opposing the motion. (Trustee's AR 12 at 18:2–9.) After the hearing, the Bankruptcy Court filed its Order Extending Time to File Notice of Appeal. (Trustee's AR 10).

On January 17, 2001, Debtor filed a Notice of Appeal from the Judgment. On January 24, 2001, Trustee filed a Notice of Appeal from the Order Extending Time to File Notice of Appeal.

## DISCUSSION

### A. Trustee's Appeal

#### 1. Debtor's Motion to Dismiss

■ Debtor argues that Trustee's appeal should be dismissed on the ground that counsel for Trustee accepted from counsel for Debtor $1,000, which the Bankruptcy Court ordered to be paid as a sanction. Debtor contends that by accepting the $1,000 payment, Trustee "accepted the benefits of the order from which he appeals manifesting an intention to bring the matter to a definite conclusion." (See Debtor's Mot. to Dismiss at 1:23–24.)

■ "[W]hen a party accepts the benefits of a judgment under circumstances which indicate an intention to finally compromise and settle a disputed claim, an appeal may be foreclosed." *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.*, 414 F.2d 750, 752 (9th Cir. 1969). "In such a case, it is ... the mutual manifestation of an intention to bring the litigation to a definite conclusion upon

a basis acceptable to all parties which bars a subsequent appeal, and not the fact, standing alone, that benefits under the judgment were accepted." *Id.* (internal quotation and citation omitted). Additionally, the general rule is subject to an exception where the court has adjudicated separable or divisible controversies, in which case the appealing party may accept the benefits of a divisible portion of an order and appeal the adverse portion thereof. *See Fidelcor Mortgage Corp. v. Insurance Co. of North America*, 820 F.2d 367, 370 (11th Cir.1987).

At the January 17, 2001 hearing, it was Debtor's counsel who suggested that it might be appropriate for the Bankruptcy Court to order him to pay the expenses incurred in opposing Debtor's motion (see Trustee's AR 12 at 15:12–14); at no time did Trustee, or counsel for Trustee, request such a sanction or award of costs. At that hearing, after the Bankruptcy Court granted Debtor's motion for an extension of time and denied Debtor's motion for a stay of judgment pending appeal, the Bankruptcy Court ordered counsel for Debtor to pay counsel for Trustee $1,000, the stated reason being that Trustee's counsel had to file opposition and on "very short time." (See id. at 18:3–6.) Debtor argues that, under such circumstances, payment of the sanctions award was "a condition of granting the motion extending the time to file a notice of appeal," (see Dell'Ario Decl. at ¶ 2), and that counsel for Trustee's subsequent acceptance of the $1,000 was a manifestation of Trustee's intent to terminate the matter.

A review of the record, however, clearly indicates that the Bankruptcy Court neither "conditioned" its grant of Debtor's motion on payment of the sanction, nor

---

**2.** All references to "Trustee's AR" correspond to the documents designated by Trustee in Trustee's Designation of Record filed on February 1, 2001.

intended that Trustee receive any benefit from the sanctions award. At a hearing subsequent to the filing of Trustee's notice of appeal, the Bankruptcy Court ruled that the $1,000 sanction was "not property of the estate" but rather "a sanction that is separate and apart from anything that the estate has to do with," and, further, that the $1,000 had been awarded to counsel for Trustee, and not to Trustee. (*See* Khatiblou Decl., Ex. E at 33.) Because Trustee received no benefit from the January 17, 2001 order granting 'Debtor's motion to extend time to file an appeal, Debtor cannot establish the applicability of the rule set forth in *Hawaiian Paradise Park.* Moreover, the Bankruptcy Court's ruling, as set forth above, can only be interpreted to mean that the question of whether Debtor established entitlement to an extension of time was completely divisible from the question of whether counsel for Trustee was entitled to an award of sanctions. *See Fidelcor Mortgage Corp.,* 820 F.2d at 370 (11th Cir.1987) (where court adjudicates divisible controversies in one order, appealing party may appeal adverse portion).

Accordingly, Debtor's motion to dismiss Trustee's appeal is hereby DENIED.

## 2. Merits

### a. Standard of Review

■ An order granting an extension of time to file a notice of appeal is reviewed for abuse of discretion. *See Marx v. Loral Corp.,* 87 F.3d 1049, 1054 (9th Cir.1996). "A court abuses its discretion when it bases its decision on an erroneous conclusion of law or when the record contains no evidence on which it could rationally base its decision." *United States v. Prairie Pharmacy, Inc.,* 921 F.2d 211, 212 (9th Cir.1990).

### b. Discussion

■ A notice of appeal from a judgment, order, or decree entered by a bankruptcy court shall be filed within ten days of the entry thereof. *See* Rule 8002(a). The bankruptcy court, however, has discretion to extend the time for filing a notice of appeal upon a showing of excusable neglect. *See* Rule 8002(c). The determination of whether excusable neglect exists is an equitable one, depending upon all the relevant circumstances, including: "the danger of prejudice to the [non-movant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the movant, and whether the movant acted in good faith." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Reynolds v. Wagner,* 55 F.3d 1426, 1429 (9th Cir.1995) (holding *Pioneer* standard applies to motion for extension of time to file appeal).

■ Prior to *Pioneer,* in the Ninth Circuit, where a party sought an extension of time to file an appeal, the standard for determining excusable neglect was " 'a strict one'," and an extension of time was available only "in 'extraordinary cases where injustice would otherwise result.' " *See Alaska Limestone Corp. v. Hodel,* 799 F.2d 1409, 1412 (9th Cir.1986) (citations omitted). In light of *Pioneer,* however, the Ninth Circuit has recognized that excusable neglect can cover cases of "negligence, carelessness and inadvertent mistake." *See Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 381 (9th Cir.1997).

Here, as the Judgment was entered on December 21, 2000, a timely notice of appeal would have been filed no later than January 2, 2001. Debtor, through counsel, first received a copy of the Judgment on January 10, 2001, when such copy was

provided to Debtor by Trustee. (Trustee's AR 5 at ¶ 8.) Debtor filed her motion for an extension of time three court days thereafter. (Trustee's AR 4.)

In support of Debtor's motion for an extension of time, Debtor's counsel submitted a declaration providing the following reasons for counsel's failure to timely file her notice of appeal: (1) on December 19, 2000, counsel for Trustee sent counsel for Debtor a copy of a proposed judgment which had been submitted to the Bankruptcy Court, but Debtor did not receive thereafter a copy of a filed judgment as required by Rule 9022–1 of the Bankruptcy Local Rules [3] (Trustee's AR 5 at ¶¶ 4, 6, 11); (2) counsel was aware that, pursuant to Rule 9021–1(c) of the Bankruptcy Local Rules, submitted orders not approved as to form are ordinarily lodged with the bankruptcy court, and then held by the court for 7 days (id. at ¶ 7); [4] (3) although counsel was present on December 18, 2001 when the Bankruptcy Court ruled on the parties' motions for summary judgment, counsel did not consider it unusual that he had not received an order by early January due to the holiday season (id. at ¶¶ 2, 7); (4) because the Bankruptcy Court had made a lengthy pronouncement of its findings at the December 18, 2000 hearing,

counsel believed that the Court might be preparing its own order (id. at ¶ 7); and (5) counsel did not have a subscription to the PACER system.[5] (Id. at ¶ 12.) At the hearing on the motion to extend time, counsel for Debtor further explained that he did not file a notice of appeal prior to entry of judgment, as allowed by Rule 8002(a),[6] because he substituted in the action after the December 18, 2000 decision and needed to familiarize himself with the record before determining if an appeal would have any arguable merit. (Trustee's AR 12 at 4:2–14.) Counsel also explained that he was counting on the time it would take for a judgment to be entered to conduct such evaluation. (Id.)

On appeal, Trustee argues that because Debtor's counsel neither checked the docket to determine the date of entry of the Judgment, nor filed a notice of appeal pursuant to Rule 8002(a) prior to entry of the Judgment, the Bankruptcy Court abused its discretion by granting Debtor's motion. As Trustee acknowledges, its argument is directed solely toward the one *Pioneer* factor concerning the reason for the delay. Trustee does not argue that any of the other *Pioneer* factors weigh

---

**3.** B.L.R. 9022–1(a) provides that "the party submitting a form of order or judgment in contested matters and adversary proceedings shall submit: (1) An original and one copy of a list of the names and addresses of the submitting and contesting parties, and the United States Trustee; (2) Sufficient copies of the order or judgment for the submitting party, each contesting party, and the United States Trustee; and (3) Two stamped envelopes addressed to the submitting party and one stamped envelope addressed to each contesting party and the United States Trustee." B.L.R. 9022–1(c) provides that "[o]nce the order or judgment is signed, a conformed copy will be mailed to the submitted party" by the Clerk, who "will note the date of the entry on the conformed copies and serve

them by mail on the parties named on the list referred to in paragraph (a)(1)."

**4.** The proposed Judgment submitted by counsel for Trustee, and thereafter signed by the Bankruptcy Court, was not approved as to form by counsel for Debtor or by Debtor. (Trustee's AR 2.)

**5.** PACER is an electronic system by which parties can access the docket sheets for court actions. *See In re Lawrence*, 244 B.R. 868, 876 (S.D.Fla.2000).

**6.** Rule 8002(a) provides that a "notice of appeal filed after the announcement of a decision or order but before entry of judgment, order, or decree shall be treated as filed after such entry and on the day thereof."

against a finding of excusable neglect. (*See* Appellant's Brief at 17:21–24.)

 The Bankruptcy Court, however, was obligated to "examine all of the circumstances involved rather than holding that any single circumstance in isolation compel[led] a particular result regardless of the other factors." *See Briones,* 116 F.3d at 382 n. 2. As noted, Trustee focuses on only one circumstance, the reason for the delay. In that regard, Debtor's explanation is weak; counsel could have checked the docket to determine if, and when, a judgment had been entered or could have filed a notice of appeal pursuant to Rule 8002(a). Although such conduct may show a lack of regard for the court's docket, in the absence of any evidence of deviousness or willfulness or of prejudice to Debtor's ability to defend the judgment on appeal, and in light of the very short period of delay, the Bankruptcy Court did not abuse its discretion in determining that Debtor was entitled to relief pursuant to Rule 8002(c).[7]

Accordingly, the Bankruptcy Court's order extending time for Debtor to file a notice of appeal from the Judgment is hereby AFFIRMED.

## B. Debtor's Appeal

### 1. Standard of Review

 An order granting summary judgment is reviewed de novo. *See In re Lewis,* 97 F.3d 1182, 1185 (9th Cir.1996). "The reviewing court will affirm a grant of summary judgment only if it appears from the record, after viewing all evidence and factual inferences in the light most favorable to the nonmoving party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *In re Yarbrow,* 150 B.R. 233, 236 (9th Cir. BAP 1993).

### 2. Discussion

 Pursuant to 11 U.S.C. § 554(c), "[u]nless the court orders otherwise, any property scheduled under section 521(1) of this title[8] not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." Such abandonment is termed a "technical abandonment." *See In re Menk,* 241 B.R. 896, 913 (9th Cir. BAP 1999). Although the general rule is that a technical abandonment is irrevocable, the first clause of § 554(c) provides bankruptcy courts with "discretion to affect or prevent technical abandonment simply by ordering otherwise." *See In re DeVore,* 223 B.R. 193, 198 (9th Cir. BAP 1998). "The statute does not limit such an order to the period prior to case closure, [citations omitted], and courts have set aside technical abandonments in 'appropriate circumstances.'" *See id.* (citing *In re Shelton,* 201 B.R. 147, 155 (Bankr.E.D.Va.1996)). "Unless the court orders otherwise, property of the estate that is not abandoned under [§ 554] and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d).

---

7. Trustee's reliance on *In re Cahn,* 188 B.R. 627 (9th Cir. BAP 1995) is misplaced. There, the party who requested an extension received a copy of the appealable order four days before the deadline for filing a timely notice of appeal. Here, in contrast, Debtor did not receive a copy of the judgment until after the deadline to file a timely appeal had passed.

8. 11 U.S.C. § 521(1) provides that a debtor has the duty to "file a list of creditors, and unless the court orders otherwise, a schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs."

As noted, Debtor appeals the Bankruptcy Court's order declaring that certain stocks and bonds, the proceeds thereof, a Florida condominium, and any other property held in the name of the Max Family Trust as of March 26, 1996, and the proceeds thereof, are property of the bankruptcy estate.

Debtor, in sworn declarations filed with the Bankruptcy Court, declared that the extent of her interest in the Max Family Trust was $1.00, and that she had not transferred any property within one year of March 26, 2001. In support of his motion for summary judgment, Trustee offered evidence to show that both statements were false. When Debtor filed her petition for bankruptcy, the Max Family Trust held brokerage accounts valued at approximately $296,000. (AR 10, Exs. A, C.) The Max Family Trust also held title to the Florida condominium, which Debtor had transferred from her name to that of the Max Family Trust for no consideration three months prior to filing for bankruptcy. (See AR 9, Ex. H.) At all times, including when Debtor filed for bankruptcy, Debtor retained the right to revoke, amend, alter, or modify the trust agreement governing the Max Family Trust. (AR 9, Exs. A, B.) Indeed, in 1999 Debtor admitted that she had recently "dissolved" the Max Family Trust, that she had "dissipated" the assets contained therein, that the beneficiaries had never been informed of the existence of the Max Family Trust, nor had they "received any benefits or anything of value from this dissolution, and [they] have no part in this matter." (Id., Ex. C.) Debtor offered no evidence to dispute Trustee's evidence.

The Bankruptcy Court, after reviewing the evidence submitted, found that no triable issue of fact existed as to whether Debtor's statements about the extent of her interest in the Max Family Trust and her denial that she made transfers in the one-year period prior to the filing of the bankruptcy petition were false, or that Debtor's false statements were made for the purpose of concealing assets. Accordingly, the Bankruptcy Court concluded, Trustee was entitled to summary judgment on his claim for declaratory relief.

On appeal, Debtor argues that the Bankruptcy Court erred in granting summary judgment because Trustee failed to show there was no triable issue of fact as to whether Debtor's disclosures were sufficient to provide Trustee with "constructive notice" of her actual interest in the assets in question. (See Debtor's Opening Brief at 12–13.) Debtor contends that she should not have to "bear responsibility for the failure of the [ ] trustee to administer the Trust assets before he asked the [ ] bankruptcy court to close the case." (See id. at 8:24–26.)

Debtor relies heavily on In re Atkinson, 62 B.R. 678 (Bkrtcy.D.Nev.1986). In that action, debtors scheduled a pending lawsuit as an asset by listing the name of the court case, the name of the court in which the action was pending, and by stating that the value was unknown to debtors. After the bankruptcy case was closed, certain creditors moved to reopen on the ground that sufficient reason existed for the court to revoke the trustee's technical abandonment of the asset. The creditors argued that the debtors' reference to the lawsuit was "cryptic" and "so inadequate a disclosure as to cause the trustee to fail to properly administer the asset." See id. at 679. The court in Atkinson, framing the issue as "whether the lawsuit was properly scheduled and considered by the trustee," held that the debtors' reference to the lawsuit on their schedules and statements was not " 'cryptic', nor an effort to conceal its existence from the trustee." See id. at 679–80. Rather, according to the court,

debtors had provided the trustee with sufficient information to allow the trustee to examine the debtors about the lawsuit and to review the pleadings and records on file in the court where the lawsuit was pending, prior to making an "informed decision" about abandoning the asset. *See id.*

Notably, none of the information provided by the debtors in *Atkinson* was false, as is the case here. Debtor fails to explain how her false statements that her interest in the Max Family Trust was only one dollar and that she had not transferred any property from her name to the Max Family Trust within the prior year was sufficient to give Trustee constructive notice of the fact that the Max Family Trust, in actuality, held assets worth hundreds of thousands of dollars. Debtor cites no case in which any court has held that an asset was properly scheduled when false information about the nature and value of the asset was provided. *Cf. id.* at 679 (holding "properly scheduled" asset considered and abandoned by trustee is irrevocably abandoned to debtor). Nor does Debtor cite any case in which a court has held that a debtor who made false statements concerning assets is nevertheless entitled to exclude such assets from the bankruptcy estate upon the theory that the trustee should have learned of the falsity of her statements.

As indicated in the Court's February 20, 2001 Order Denying Appellant's Motion for Stay Pending Appeal, "no case has held that revocation is inappropriate where a debtor has wrongfully concealed assets or the nature of her interest therein." (*See* Order at 6:1–3.) Indeed, bankruptcy courts have recognized that one of the "universal exceptions to the finality of abandonment of an asset" is where "the trustee is given incomplete or false information of the asset by the debtor." *See In re Ozer*, 208 B.R. 630, 633 (Bankr.E.D.N.Y.

1997). The reasoning behind this "universal exception" is that "the abandonment could not have been knowing and intentional if the above flaws existed." *See id.* at 634.

As stated by one bankruptcy court, "[t]he [Bankruptcy] Code does not deprive creditors of the right to share in the debtor's property merely because the trustee failed to find the property or failed to take possession of it for creditors." *See In re Harris*, 32 B.R. 125, 128 (Bankr. S.D.Fla.1983). Rather, the Bankruptcy Code "deprives the creditors of the right to share in the debtor's property only if that property was formally abandoned by the court after a hearing or if the property was explicitly identified in the debtor's bankruptcy schedules and was never administered by the trustee during the pendency of the case." *See id.*

Here, no triable issue of fact exists as to whether Debtor provided incomplete and false information about her assets on her bankruptcy schedules and statements. There is no evidence to support a finding that the "universal exception to the finality of abandonment of an asset" should not be applied. Further, Debtor has provided no authority for the proposition that her false statements can be excused on the ground that the Trustee did not learn of the falsity of the statements prior to closing the case. Consequently, Debtor has failed to establish that the Bankruptcy Court erred by not finding there was a triable issue as to whether the Trustee was on "constructive notice."

Finally, Debtor argues that the Bankruptcy Court erred by failing to consider the length of time between the closing and reopening of the case. *See In re Adair*, 253 B.R. 85, 89 (9th Cir. BAP 2000) (holding "[i]n considering a motion to revoke abandonment of an asset, it is appropriate to consider the length of time between

closure of the case and the request to reopen"). The Bankruptcy Court, however, in its recitation of the facts, stated the dates of the closure and reopening, thus establishing it was aware that twenty-two months had elapsed between the closure and reopening. (AR 22 at 10:12–18.) The Bankruptcy Court also was aware that the former trustee moved to reopen the case after he was "alerted to the Debtor's concealment of assets by her ex-spouse." (*Id.* at 10:14–15.) Nothing in the record indicates that the Trustee delayed moving to reopen once he became aware of the need to investigate the existence of concealed assets.

Accordingly, the Bankruptcy Court did not err in granting summary judgment in favor of Trustee on Trustee' claim for declaratory relief.[9]

### CONCLUSION

For the reasons stated above,

1. Debtor's motion to dismiss Trustee's appeal is hereby DENIED;

2. The Bankruptcy Court's order granting Debtor's motion for an extension of time to appeal is hereby AFFIRMED;

3. The Judgment of the Bankruptcy Court is hereby AFFIRMED.

The Clerk shall close the file and terminate all motions in File Nos. C–01–0380 and C–01–0535.

**IT IS SO ORDERED.**

---

9. Debtor's renewed motion for stay pending appeal, filed May 10, 2001, *is* hereby DE- NIED as moot.